THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
LEONARD LUTZ, PLAINTIFF IN ERROR.

Submitted October 1, 1946—Decided April 30, 1947.

Before CASE, CHIEF JUSTICE, and Justices HEHER and COLIE.

For the plaintiff in error, *Earl T. Milsop* (*Mortimer L. Mahler,* of counsel).

For the state, *Gene R. Mariano,* Prosecutor of the Pleas.

The opinion of the court was delivered by

HEHER, J.  Plaintiff in error was convicted of four separate and distinct robberies upon indictments which also alleged his prior convictions of two unrelated high misdemeanors in the Atlantic Quarter Sessions, viz.: on October 29th, 1924, breaking and entering, and on January 20th, 1930, kidnapping.  These indictments were tried together; they grew out of a holdup of a taproom and restaurant by four or five men armed with revolvers and a machine gun. The accused was sentenced upon each indictment as a third offender under *R. S.* 2:103–9, as amended by chapter 219 of the Laws of 1940 (*Pumph. L., p.* 888), for a term exceeding the maximum sentence for a first offense, the sentences to run consecutively; and he thereupon sued out a writ of error to review the judgment.

The entire record of the trial proceedings has been returned with the writ of error and bill of exceptions, pursuant to *R. S.* 2:195–16.

Evidence of the earlier convictions was adduced by the State; and the admission of this proof is assigned for error. The accused did not go upon the witness stand; and it is said that the evidence of the prior convictions was therefore inadmissible under *R. S.* 2:97–13 to affect his credibility, and it "is solely within the province of the court as a question of law," and not of fact for the jury, to determine whether the accused "should be sentenced as a third offender" under section 2:103–9, *supra,* and thus the admission of the evidence was harmful as tending to establish guilt of the substantive crime laid to the accused in the indictment.  The point is not well taken.

There is an aggravation of guilt in the repetition of criminal conduct that warrants the imposition of a heavier penalty when the malefactor is again convicted, if the legislative authority so wills; but it is essential to due process that there be an allegation in the indictment of the previous convictions upon which the enhancement of the punishment depends, and proof thereof upon the trial, or that there be a subsequent proceeding in which shall be determined the identity and status of the prisoner in this regard, and his liability to the

increased penalty. Where a repetition of criminal action renders the accused liable to different and greater punishment, the subsequent offense is treated as a first offense, unless the earlier crimes are specified in the indictment and proved on the trial. *State* v. *Garton,* 102 *N. J. L.* 318; *Weeks* v. *State,* 101 *Id.* 15; *Graham* v. *West Virginia,* 224 *U. S.* 616; 32 *S. Ct.* 583; 56 *L. Ed.* 917. The procedure must accord with the convict's fundamental right to be heard on notice as to his liability to the heavier penalty which may be inflicted only upon persistent offenders of the statutory category. *Pennsylvania, ex rel. Sullivan* v. *Ashe,* 302 *U. S.* 51; 58 *S. Ct.* 59; 82 *L. Ed.* 43. The usual practice is to allege the prior convictions in the indictment, and to submit the factual issue thereby arising to the jury; and this course is obligatory save where the statute makes other adequate provision for the inquiry, which is not the case here. The procedure has its roots in the fundamental common-law principle that in penal proceedings the accused shall be clearly informed of the charge which he is called upon to meet; and this of necessity includes a specification of the elements of aggravation which under the statute enlarges the grade of the crime by enhancing the punishment. *People* v. *Sickles,* 156 *N. Y.* 541; 51 *N. E. Rep.* 288; *People* v. *Rosen,* 208 *N. Y.* 169; 101 *N. E. Rep.* 855. The statute provides that the convict "may be sentenced for any period of time not exceeding three times the maximum period for which he might have been sentenced for a first offense, and no commutation shall be allowed him on the third sentence," and he shall, in addition, "serve the commutation time earned and allowed under any previous sentence for an offense committed in this State." Section 2 :103–9, *supra.*

And it is a corollary of the foregoing that evidence of the earlier convictions is not inadmissible because it may incidentally tend to prove the accused guilty of the substantive crime charged in the indictment. Here, the judge made clear to the jury the reason for the introduction of the evidence of the previous convictions; and he cautioned that those convictions had no bearing whatever upon the issue of the accused's guilt of the charges of robbery laid to him in the indictment.

And there is no substance to the contention that the verdict is contrary to the weight of the evidence.

The verdict is grounded in circumstances reasonably and naturally tending to establish that the accused was a participant in the robberies. One of the robber band wore a brown Harris herringbone tweed topcoat; and directly after the holdup, which took place on February 7th, 1945, at about 2:50 A. M., a topcoat of this description, a fur coat stolen from one of the women entertainers employed at the tavern, and a revolver and three bottles of whiskey were found in a Buick automobile of one DeSanctis parked outside of the building. It was conclusively proven that the accused was the owner of the topcoat found in the automobile. When interrogated after his arrest, he at first denied, and then admitted, ownership of the garment. And it was in proof that he wore the brown tweed topcoat prior to the robbery, and that when he was placed under arrest a gray topcoat, but not the brown, was found in his living quarters whose source he would not identify. DeSanctis was in the tavern when the bandits, all masked, entered. Some time before, he had conveyed to the tavern four or five women entertainers employed there, and had undertaken to return them to their respective places of abode after their work was done. He had supplied this service for some two weeks before the day in question. There was evidence that, as the bandits were leaving, one of them pointed to DeSanctis and, referring to him as the man "with the Buick convertible," seized and "took him outside." A police officer who came upon the scene in an automobile found four men running from the building, one or more of whom directed revolver shots at him as he alighted from his vehicle. One of them—DeSanctis, it was later found—"dropped to the ground" and "crawled in front of the police car;" the other three escaped in an automobile. DeSanctis told the officer there had been a "stickup," and they entered the tavern together, DeSanctis at the command of the officer. The Buick automobile was then parked in the tavern driveway, to the rear of the police car. DeSanctis was the operator of a "speakeasy" in Camden; and there was evidence that the accused, DeSanctis and two others

were together in the latter's place of business on the prior evening, at about 11 o'clock. And the revolver found in the automobile, through "a chip on the handle," the color of the handle, and the size of the weapon as compared with others used in the holdup, was identified by an entertainer as the gun carried by one of the bandits. Indeed, it was conceded at the trial that it was one of the weapons used in the perpetration of the robbery. And a patron identified the accused as one of the robber gang because of his distinctive gait. It was he, the witness said, who wore the brown tweed topcoat.

Thus, there was evidence of inculpative circumstances relating to acts of the accused which he could by his oath deny, if the evidence was without foundation in fact; and his failure to testify in his own behalf raised a strong presumption that he could not truthfully deny them. The omission enters into the evaluation of the proofs as a whole. *State* v. *Friedman,* 135 *N. J. L.* 414. The circumstances reasonably tend to establish guilt of the offenses charged; and it was for the jury to determine whether they had the probative force requisite to exclude reasonable doubt of guilt. A finding of guilt in a criminal case may rest upon indirect or circumstantial evidence if it be in quality sufficient to generate in the jurors's minds a belief and conviction of guilt beyond a reasonable doubt; and a verdict of guilty is not to be set aside as against the weight of the evidence unless it clearly appears that it was the product of mistake, passion, prejudice, or partiality. *State* v. *O'Connor,* 134 *Id.* 536. The verdict here obviously is not in this category.

It goes without saying that there was no error in the denial of the motion for a directed verdict of acquittal. And there was no harmful error in the judge's comments upon the evidence in his instructions to the jury.

Judgment affirmed.