13 N.J. Super. 312 (1951)
80 A.2d 480
IN THE MATTER OF THE APPLICATION OF GEORGE B. ZEE FOR ISSUANCE OF WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Mercer County Court Law Division.
Decided April 19, 1951.
*315 Mr. Henry G.P. Coates, for petitioner, in forma pauperis.
Mr. Theodore D. Parsons, Attorney-General of the State of New Jersey (Mr. Eugene T. Urbaniak, Deputy Attorney-General, appearing), and Mr. Mitchell H. Cohen, Prosecutor of the Pleas of Camden County (Mr. Benjamin Asbell, Assistant Prosecutor, appearing), for the State.
*316 HUGHES, J.C.C.
On the basis of a verified petition alleging his unlawful imprisonment in the New Jersey State Prison, the writ of habeas corpus was issued to George B. Zee under the authority of R.S. 2:82-1, et seq. The State made its return and justified its detention of petitioner in conformity with a commitment of the former Camden County Court of Quarter Sessions, evidencing that on October 22, 1941, there was imposed upon him therein a sentence to the state prison for the duration of his natural life. Conviction had been had on an indictment charging breaking, entering and larceny and also prior convictions of defendant of three high misdemeanors, and sentence was imposed upon him under R.S. 2:103-10, as amended L. 1940, c. 219, p. 889, § 3.[1]
The hearing on the writ accomplished little, except to provide a general factual basis for the legal contentions of the petitioner, and his case is determinable without further amplification of this factual record.
The principal contentions of petitioner deal with the failure of the State at trial to offer adequate proof of his previous convictions of crime as alleged in the indictment; his claim that the statute mentioned, which is a part of the Habitual Criminal Act, is unconstitutional as ex post facto legislation; that the statute is also unconstitutional as providing cruel and unusual punishment for the offense which may precipitate its application, which may be a comparatively minor violation *317 of the criminal law; and finally, that he was denied, unlawfully, a trial by jury in violation of his constitutional right thereto. The petitioner asserts that on each and every one of these grounds the court lacked jurisdiction to convict and sentence him and such claimed lack of jurisdiction is indeed the only basis on which he can seek the intervention of this court on habeas corpus. In re Caruso, 135 N.J.L. 522 (Sup. Ct. 1947).
There is no doubt that the application of the Habitual Criminal Act depends upon the furnishing of adequate proof of the prior offenses, for it is well settled that proof of every act necessary to make the law apply is essential; that the court may not take judicial notice of the record of prior convictions; that the burden of proving the prior convictions and the identity of the defendant as being the same person previously convicted rests with the State and must be established beyond a reasonable doubt. State v. Lutz, 135 N.J.L. 603 (Sup. Ct. 1947); Singer v. United States, 278 Fed. 415 (3 C.C.A. 1921); State v. Janiec, 9 N.J. Super. 29 (App. Div. 1950); State v. Burns, 136 N.J.L. 601 (E. & A. 1948).
But, though a failure to meet these standards at trial will invalidate the conviction on appeal, such deficiency in proof does not go to the jurisdictional capacity of the court and hence is not remediable on habeas corpus. In re Caruso, supra; In re Hall, 94 N.J. Eq. 108 (Ch. 1922); In re Scridlow, 124 N.J.L. 342 (Sup. Ct. 1940); In re Cooley, 12 N.J. Super. 97 (Cty. Ct. 1951). That writ may not be used in lieu of appeal. In re Rose, 122 N.J.L. 507 (Sup. Ct. 1939). The fact that the time for appeal has expired is of no moment. Ex Parte Hill, 2 N.J. Super. 598 (Law Div. 1949); In re Tremper, 126 N.J. Eq. 276 (Ch. 1939).
The petitioner initially challenges the constitutionality of the statute, which he asserts is ex post facto because it permits that there be shown in evidence against the defendant charged thereunder, previous criminal offenses committed before the effective date of the act. The act as it existed prior *318 to amendment, L. 1927, c. 263, § 1, p. 483,[2] describes the relevant prior offenses, in part, as those entailing service of state prison sentences imposed thereon, whereas the act as amended in 1940, supra, has no such limitation and depends only upon convictions of crime of the grade of high misdemeanors, regardless of the sentences imposed thereon. Petitioner deems this particularly apropos to his case because the previous offenses pleaded against him all antedated the amendment of the statute and on one of them he was granted probation and was not sentenced to the state prison. Hence, he argues that insofar as the application of the amended act is made to depend on previous offenses of different character than those mentioned in the law in effect when those offenses were committed (L. 1927, supra), the Habitual Criminal Act, as so amended, is ex post facto in that it alters the grade of proofs necessary to bring him within its orbit. This argument is akin to the legal assaults which have been made on habitual offender statutes, namely, that the act punishes the prior offenses and hence is ex post facto.
This reasoning is fallacious. Habitual offender statutes, such as the one in effect here, do not undertake to punish again for the prior offenses. They enhance the punishment for the subsequent offense. A statute is not constitutionally offensive which enhances the punishment for the offense which culminates the repetitive criminal conduct, even though the prior offenses occurred before the statute was enacted or became effective. Such legislation is held not to increase the penalty for the prior crimes, but only to impose *319 punishment for the latter, the gravity of which is increased by the persistence of the accused in criminality.
"A law is not objectionable as ex post facto which, in providing for the punishment of future offenses, authorizes the offender's conduct in the past to be taken into the account and the punishment to be graduated accordingly. Heavier penalties are often provided by law for a second or any subsequent offense then for the first; and it has not been deemed objectionable that, in providing for such heavier penalties, the prior conviction authorized to be taken into the account may have taken place before the law was passed. In such case, it is the second or subsequent offense that is punished, not the first. * * *" Cooley, Const. Lim. 553.
Plainly, the theory of this enhancement of punishment is aimed at criminals of the recidivous type and the punishment for the culminant offense is greater not by relation back to the previous offenses, but only because such criminal has brought himself within a class established by law as deserving and requiring a more severe punishment and restraint than the class of criminals less hardened to crime. Blackburn v. State, 50 Ohio St. 428, 36 N.E. 18 (Sup. Ct., Ohio, 1893). The punishment is for the new crime only, but is the heavier if the offender is an habitual criminal. The statute thus imposes a punishment on none but future crimes and is not ex post facto. It affects alike all persons similarly situated and, therefore, does not deprive anyone of the equal protection of the laws. McDonald v. Massachusetts, 180 U.S. 311, 45 L.Ed. 542, 21 S.Ct. 389 (1901); Carlesi v. New York, 233 U.S. 51, 58 L.Ed. 843, 34 S.Ct. 576 (1914). The courts have held quite uniformly to this theory in approving statutes expressing this policy of enhancing punishment for the habitual criminal. 116 A.L.R. 211, n. It is the consensus that the habitual criminal statute is sound in principle and sustained by reason. Aside from the offender and his victim, there is always another party concerned in every crime committed, namely, the State; and it does no violence to any constitutional guarantee for the State to enhance the punishment for second or subsequent offenses. The true ground upon which these statutes are sustained is that the *320 punishment is awarded for the second offense only and that in determining the amount and nature of penalty to be inflicted, the Legislature may require the courts to take into consideration the persistence of the defendant in his criminal course. 25 Am. Jur., Hab. Crim., p. 261; People v. Brophy, 287 N.Y. 132, 38 N.E.2d 468 (Ct. App., N.Y., 1941), cert. den. 317 U.S. 625, 87 L.Ed. 506, 63 S.Ct. 62 (1942). This type of legislation was established very early in this country, and the United States Supreme Court has commented that it has uniformly been sustained in the state courts. Graham v. West Virginia, 224 U.S. 616, 56 L.Ed. 917, 32 S.Ct. 583 (1912).
And our New Jersey courts have quite strongly defended the ability of the modern state by comparable legislation to reach and rid itself of the scourge of habitual criminality, within constitutional boundaries, as a matter of necessary public policy. State v. Pius, 118 N.J.L. 212 (Sup. Ct. 1937); State v. Bell, 15 N.J. Misc. 109 (Sup. Ct. 1937), affirmed State v. Gaynor, 119 N.J.L. 582 (E. & A. 1938).
Coming now to the claimed unconstitutionality of this act as providing cruel and unusual punishment, in that the culminant offense punished ("* * * and who shall thereafter be convicted of a subsequent offense enumerated in this subtitle, * * *" N.J.S.A. 2:103-10, supra.) may be one of comparatively minor character, it is the sense of this contention by petitioner that the court under this statute is obliged to impose a life sentence even though the terminal crime involved might be one which would not in itself seem to warrant such severity. It is true that the subtitle referred to is a somewhat comprehensive tabulation of crimes under the law of this State, ranging from offenses of the gravity of treason and murder to others such as the defacement of signposts and like offenses (R.S. 2:148-12), which, while of comparatively minor nature, are classified as misdemeanors. Whatever may be the legislative wisdom in conjoining the mandatory sentence prescribed by N.J.S.A. 2:103-10, supra, with the catch-all subtitle establishing statutory crimes *321 in this State, on which the court is not free to comment, there is little doubt of the existence of such legislative power. The fixing of penalties for crimes is a legislative function. What constitutes an adequate penalty is a matter of legislative judgment and discretion and the courts will not interfere therewith unless the penalty prescribed is clearly and manifestly cruel and unusual. Schultz v. Zerbst, Warden, etc., 73 F.2d 668 (10 C.C.A. 1934); Moore v. Aderhold, Warden, etc., 108 F.2d 729 (10 C.C.A. 1939). While the difficulty in determining precisely what is meant by cruel and unusual punishment has been recognized (Cooley, Const. Lim. 694), the United States Supreme Court has dealt exhaustively with the subject (Weems v. United States, 217 U.S. 349, 54 L.Ed. 793, 30 S.Ct. 544 (1910)), and that court has held that the enhancement of punishment by way of added imprisonment does not amount to the infliction of cruel and unusual punishment. Graham v. West Virginia, supra; Beland v. United States, 128 F.2d 795 (5 C.C.A. 1942), cert. den. 317 U.S. 676, 87 L.Ed. 543, 63 S.Ct. 157, rehearing den. 317 U.S. 710, 87 L.Ed. 566, 63 S.Ct. 205 (1942).
Our former Supreme Court, in upholding the constitutionality of the former act (L. 1927, c. 263, supra), which, of course, left the imposition of life sentence discretionary with the court (In re Caruso, 131 N.J.L. 505 (Sup. Ct. 1944); Id., 135 N.J.L. 522 (Sup. Ct. 1947), supra) commented approvingly on People v. Gowasky, 244 N.Y. 451, 155 N.E. 737 (Ct. App., N.Y., 1927), which construed and approved the mandatory feature of the fourth-term sentence under the habitual offender statute in that state. And although the culminant offense bringing that statute into operation must have amounted to a felony (as distinguished from an "offense enumerated in this subtitle," as contained in our statute), Judge Crane there conceded the possibility of unhappy operation of the statute in the isolated case, and the inability of the courts to avoid it, as follows:
"This may work extreme hardship in certain cases where the sentencing judges would be justified in feeling that the punishment *322 was too severe for the nature and circumstances of the crime or crimes committed, but these are matters for the Legislative or the Executive. Courts have no inherent power to modify statutes to meet exceptional cases. Courts declare the law as it is." People v. Gowasky, supra.
I think the same principle must apply here and that the mandatory life sentence provided in our statute does not inflict a penalty which is so "clearly and manifestly cruel and unusual" (Schultz v. Zerbst, Warden, etc., supra) as to justify its classification as unconstitutional.
The final point of the petitioner also raises a question going to the jurisdiction of the court which sentenced him. Upon this indictment, he was entitled to a jury trial on the basis of constitutional guarantees which need not be reviewed. The statute, R.S. 2:191-1, provides a formula, contended by petitioner to be an exclusive method for the waiver of jury trial on any offense, as here, triable before the former Court of Quarter Sessions. This method required certain basic formalities, including a written waiver by the prisoner and a request to be tried before the former Court of Special Sessions, a report thereof to the judge of such court and the decision of that judge to approve such request, and to proceed to hear the case in such Special Sessions. None of this procedure was followed in the petitioner's case, but upon his appearance and plea of not guilty before the judge of the former Court of Quarter Sessions, and while represented by counsel, action was taken which resulted in the clerk of the court endorsing in his minutes, "trial by jury was waived by consent." No stenographic transcript of any of the proceedings is now available. The minutes further indicate that the trial proceeded, witnesses were called by the State, the defendant took the stand and testified in his own behalf, the court deliberated on its verdict and convicted the defendant on certain counts of the indictment. On this conviction, petitioner was duly sentenced the New Jersey State Prison for the term of the balance of his natural life. Nothing appears in the minutes inconsistent with a full and voluntary participation by petitioner and his counsel in the trial. Petitioner was received at the *323 prison to commence service of his term on October 23, 1941. His instant petition for habeas corpus was verified and filed by him in June, 1950. On his application, counsel was appointed for him as an indigent party, a hearing came on in due course and the parties were given leave to file briefs. Supplemental briefs were found necessary and were filed.
The petitioner presently contends that he was unlawfully deprived of trial by jury. There is no doubt of his cooperation in that procedure, although the ineffectiveness thereof to confer jurisdiction on the court is emphasized. Richardson v. State Board, etc., 98 N.J.L. 690 (Sup. Ct. 1923); State v. O'Leary, 110 N.J.L. 36 (E. & A. 1933); Hopt v. Utah, 110 U.S. 574, 28 L.Ed. 262, 4 S.Ct. 202 (1883). He does not explain the lapse of almost nine years in complaining of the alleged unwarranted loss of his liberty for the term of his life. On the basis of this field of circumstance, the State moves now to dismiss the writ.
I think this motion is well taken and I decline to explore into the merits of petitioner's present claim of jurisdictional incapacity in the Quarter Sessions, basing my action on the reasoning of the late Vice-Chancellor Buchanan in In re Tremper, supra. In that case the learned court, in the face of a contention that the most important jurisdictional elements were absent in the trial of a homicide case, declared the right of a court, even under such circumstances, to withhold the writ of habeas corpus in the exercise of a sound judicial discretion. In that case, defendants had acquiesced in being tried for murder by a jury of 11 persons, one juror having become ill during trial; here the petitioner assertedly waived jury trial in the Quarter Sessions. There the defendants took no appeal, although ample time existed therefor; neither did this petitioner. There the applicants waited 4 1/2 years to appeal to a court on habeas corpus for the protection of their constitutional rights; this petitioner has waited almost twice as long.
On appeal from the vice-chancellor's decision in that case (In re Tremper, 129 N.J. Eq. 274 (E. & A. 1941)), our *324 former Court of Errors and Appeals rested its affirmance of the discharge of the writ on a different ground, i.e., that although conviction by the 11-member jury was erroneous and would have fallen on appeal, the jurisdiction of the court remained unimpaired and the error was, therefore, not remediable by habeas corpus. As I understand that decision, however, it did not foreclose nor disapprove the principle expressed in the vice-chancellor's discharge of the writ on the somewhat startling theory that although it is uniformly conceded that lack of jurisdiction of the subject matter in a court renders the judgment of that court nugatory and open to collateral attack, there must come a time when litigation thereon is impossible, at least by habeas corpus.
The compelling logic of the decision of that lower court applies with equal force to the instant application. Here this petitioner, charged by indictment with an offense which, on conviction, would subject him to a life sentence, appeared in court with apparently qualified counsel, entered a not guilty plea, waived jury trial, was tried, convicted and sentenced. He made no objection during trial. He made no outcry on the imposition of sentence. He took no appeal. He made no application to the trial court for relief. So far as the record before me indicates, he made no earlier application for habeas corpus on discovery of the loss of the fundamental constitutional safeguard of jury trial. He shows no special circumstances which would explain this delay. Meanwhile, in the ordinary course of events, it may be presumed that witnesses for the State have died or disappeared and certainly the testimonial assets of the prosecution have been dissipated with the passage of time.
The most grievous and fundamental trial errors, such as the admission of hearsay or other inadmissible evidence, could have brought about this petitioner's conviction in 1941, and yet his right to relief would have been foreclosed after the time for appeal had run. Why should he then be permitted to wait many additional years before complaining of "jurisdictional" errors in the making of which he acquiesced *325 and cooperated? Or, as stated in In re Tremper, 126 N.J. Eq. 276, supra,
"How can it be said that although a defendant claiming a non-jurisdictional but grievously harmful error, is prevented by the statutory provisions (prescribed by the legislature as expressing that which is just and right), from having his claim entertained by any court after one year from the imposition of sentence, nevertheless a defendant claiming a jurisdictional error * * *, ought as a matter of fairness, justice and right, to be entitled to have his claim entertained, on habeas corpus, four or five years after the imposition of sentence? And if four or five years after, why not ten or twenty or thirty years after?"
I think the answer to this question must also be found in the reasoning of the opinion last cited, as follows:
"True it is that it is the public policy of this state that all due safeguards against injustice, and all constitutional rights, should be preserved to persons accused of crime; and that a court, on habeas corpus, has the corresponding judicial responsibility of endeavoring to see to it that that policy is properly carried out. But it is equally true that it is the public policy of this state, and to the interest of its citizens, that those guilty of crime should not go unpunished; that there should not be undue litigation; and that where the state has provided for the person accused of crime, by means other than habeas corpus, all due and reasonable opportunities for him to obtain for himself the enforcement of the legal and constitutional rights to which he is entitled, he should not be permitted either to harass the state and its citizens by further repeated attempts by legal proceedings to litigate over again that which has been definitely determined against him, nor to endeavor to accomplish a fraud and imposition upon the state and its citizens under the guise of an effort to obtain the benefit of his legal and constitutional rights aforesaid after having had full and ample opportunity to obtain those benefits. As to this, also, the court, on habeas corpus, has a corresponding judicial responsibility."
The writ of habeas corpus, while not a writ of course, is sometimes said to be a writ of right, when cause is shown for its issuance. In re Thompson, 85 N.J. Eq. 221 (Ch. 1915); In re Gottsmann, 141 N.J. Eq. 271 (E. & A. 1948). If it be true that decision to issue the writ rests in the sound judicial discretion of the court, as a matter of fairness, justice and right, which is hardly open to *326 question (In re Thompson, supra), then the instant case is one in which the writ definitely should not have issued.
I adhere to the theory of the opinion of the former Court of Chancery expressed in the Tremper decision, 126 N.J. Eq. 276, supra, and, again for the protection of the rights of this petitioner, I record that on the ground last cited, as well as that questioning the sufficiency of the proofs under the indictment, I determine that the writ was improvidently issued,[3] and should be quashed and discharged as though the writ had been denied on application therefor. On the grounds challenging the constitutionality of the Habitual Criminal Act, the writ may have properly issued (see In re Rose, supra) and in view of my determination that such statute is valid, I deny release on habeas corpus, discharging the writ after hearing on the merits.
The writ is, therefore, discharged and the petitioner remanded to custody.
NOTES
[1] "2:103-10. Habitual criminals; fourth offense; life sentence to be imposed.

Any person who on three separate occasions has been convicted of high misdemeanors in this State, or of crimes under the laws of the United States or of any other State or country, which crimes would be high misdemeanors if committed in this State, or whose convictions for such offenses in this State or under the laws of the United States or of any other State or country shall total three or more, and who shall thereafter be convicted of a subsequent offense enumerated in this subtitle, is hereby declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, shall impose a life sentence in the State Prison upon the person so convicted." As amended L. 1940, c. 219, p. 889, § 3.
[2] "2:103-10. Habitual criminals; fourth offense; life sentence may be imposed.

Any person who has been three times convicted of crimes enumerated in this subtitle and sentenced each time to the state prison, and has served such three sentences so imposed, or any part thereof, and who shall thereafter be convicted of a subsequent offense enumerated in this subtitle, is hereby declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, in imposing sentence, may, in its discretion, impose a life sentence in the state prison upon the person so convicted."
[3] "The courts in habeas corpus proceedings are not bound by any hard and fast rules of procedure or of pleading, and oft-times issue the writ (where there seems on preliminary inspection of the petition a reasonable likelihood that petitioner is entitled to the writ) leaving until consideration of the whole case, the actual determination of the question as to whether petitioner was entitled to have the writ issue." In re Tremper, 126 N.J. Eq. 276, at p. 293, supra.