30 N.J. Super. 561 (1954)
105 A.2d 429
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES CULVER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Considered April 26, 1954.
Decided May 21, 1954.
*562 Before Judges EASTWOOD, JAYNE and SMALLEY.
Mr. William E. Ozzard, Assistant County Prosecutor, on the brief for respondent (Mr. Leon Gerofsky, County Prosecutor, attorney).
Mr. James Culver, pro se.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The application of James Culver for the issuance of a writ of habeas corpus to review the legality of his confinement in State Prison was denied and he appeals from the ensuing judgment.
On December 23, 1947 the appellant, having entered guilty pleas to three separate allegations each charging in one count armed robbery and in the second count that the defendant had been previously convicted of three high misdemeanors, was sentenced to a term of life imprisonment in each case. The sentences imposed on two of the allegations were to run concurrently with that imposed upon Allegation No. 3577.
On November 17, 1953 appellant presented an application to the Law Division of this court for a writ of habeas corpus, alleging that the life imprisonment sentences were illegal in that (1) his pleas of guilty were entered without the aid or advice of counsel; (2) that he signed the allegations upon the advice of a county official on the detective's staff; (3) that one of his three prior convictions was not a high misdemeanor; and (4), that he had not been previously convicted of high misdemeanors on three separate occasions.
The judge of the County Court, to whom the matter was referred by the assignment judge, refused to issue the writ on the ground that no basis for the relief prayed for by the petition had been shown.
The only question raised by this appeal requiring consideration is that concerning the imposition of the sentences of life imprisonment. Actually, this contention of the appellant, in effect, asserts that the sentences were illegal and should be corrected. Such a contention is not reviewable by habeas corpus. In re Kershner, 9 N.J. 471 (1952), certiorari denied *563 Kershner v. State of N.J., 344 U.S. 844, 73 S.Ct. 59, 97 L.Ed. 656; State v. Moore, 21 N.J. Super. 419 (App. Div. 1952). An application for correction of an illegal or improper sentence under R.R. 3:7-15 may be made to the sentencing court at any time. In the instant case the County Court, adverting to the rule that an illegal sentence may not be reviewed by habeas corpus, decided, however, to treat the application as one for correction of sentence, and held that the sentences were legal and called for no correction. Under the circumstances, we will proceed to a consideration and determination of the issue.
At the outset, it appears from the State's brief as well as from the County Court's opinion that the three prior convictions charged in each of the accusations were unquestionably high misdemeanors, to wit: July 15, 1938, the defendant was convicted in Middlesex County of breaking, entering and larceny; on January 26, 1940, in the same county, he was convicted of grand larceny and receiving; on January 26, 1940, in the same county, he was further convicted of grand larceny and receiving, all high misdemeanors.
It is the appellant's further contention that two of the accusations were consolidated for trial, which trial was held on the same date, January 26, 1940, and, therefore, the resulting convictions must be considered as one, which, with the other conviction in 1938, made a total of only two prior separate occasions on which he had been convicted of high misdemeanors. Accordingly, so Culver argues, when he entered pleas of guilty in 1947 to the three allegations in Somerset County, he had not and could not be convicted as an habitual criminal, and consequently the sentences of life imprisonment were invalid.
Attention must be first directed to the fact that in the present case the life imprisonment sentences were imposed upon the appellant subsequent to the 1940 amendment (L. 1940, c. 219, p. 889, sec. 3), R.S. 2:103-10, and prior to the 1951 amendment, now N.J.S. 2A:85-12, whereas in State v. McCall, 27 N.J. Super. 157 (App. Div. 1953); reversed 14 N.J. 538 (1954), hereinafter discussed, the judgment *564 was entered subsequent to the 1951 amendment, to wit: in December 1952. The 1940 amendment reads as follows:
"Any person who on three separate occasions has been convicted of high misdemeanors in this State, or of crimes under the laws of the United States or of any other State or country, which crimes would be high misdemeanors if committed in this State, or whose convictions for such offenses in this State or under the laws of the United States or of any other State or country shall total three or more, and who shall thereafter be convicted of a subsequent offense enumerated in this subtitle, is hereby declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, shall impose a life sentence in the State Prison upon the person so convicted."
In the 1951 amendment, in addition to the change in the introductory line of the section, the Legislature added the following paragraph:
"Conviction of 2 or more of such crimes or high misdemeanors charged in 1 indictment or accusation, or in 2 or more indictments or accusations consolidated for trial shall be deemed to be only 1 conviction."
An examination of the reported decisions of our courts following the 1940 amendment and prior to the adoption of the 1951 amendment, discloses that our courts did not specifically construe the words "on three separate occasions" as used in the 1940 amendment. See State v. Lutz, 135 N.J.L. 603 (Sup. Ct. 1947); State v. Burns, 136 N.J.L. 601 (E. & A. 1948); State v. Janiec, 9 N.J. Super. 29 (App. Div. 1950), affirmed 6 N.J. 608 (1951), certiorari denied 341 U.S. 955, 71 S.Ct. 1007, 95 L.Ed. 1376; In re Zee, 13 N.J. Super. 312 (Cty. Ct. 1951), affirmed 16 N.J. Super. 171 (App. Div. 1951), certiorari denied 343 U.S. 931, 72 S.Ct. 766, 96 L.Ed. 1340; State v. McBride, 15 N.J. Super. 436 (App. Div. 1951); In re Caruso, 10 N.J. 184 (1952). The first time the provision was directly considered and decided appears to have been by the Appellate Division in the McCall case, supra. On appeal to the Supreme Court, Mr. Justice Burling, speaking for the court, stated that the 1940 amendment had been considered in In re Zee, supra; that the *565 State (in the McCall case) contended that "In re Zee is controlling and requires the construction of N.J.S. 2A:85-12, supra, to the effect that each separate prior conviction for each separate prior offense is a `conviction' on a separate occasion." Justice Burling stated further that neither In re Zee, supra, nor In re Caruso, supra, was this question specifically considered, although the court had approved the Zee case (In re Caruso, supra), holding that the philosophy inherent in R.S. 2:103-10, as amended in 1940, supra, was expressed as enhancement of the penalty for subsequent offenses, taking into consideration the persistence of the defendant in his criminal course. Although the Supreme Court's approval of the Zee case occurred after the enactment of the 1951 amendment (December 1951), Mr. Justice Burling stated further, "it is a certainty that the Legislature was cognizant of Judge Richard J. Hughes' opinion therein (filed April 19, 1951) and of the Appellate Division affirmance (October 9, 1951)"; and that "It is well settled that in construing a statute it is to be assumed that the Legislature was and is thoroughly conversant with its own legislation and the judicial construction thereon"; that:
"The Legislature could place emphasis on service of prior sentences, as in the 1927 act, or solely on the commission of separate subsequent offenses (and conviction thereof) giving the criminal an opportunity to reconsider the error of his ways after first, second and third convictions.
The 1951 amendment hereinabove adverted to changed the introductory line of the section (now N.J.S. 2A:85-12, supra). This would have meant little in itself. At the same time, however, the Legislature added the following paragraph:
`Conviction of 2 or more of such crimes or high misdemeanors charged in 1 indictment or accusation, or in 2 or more indictments or accusations consolidated for trial shall be deemed to be only 1 conviction.'

* * * * * * * *
The crux of this case is whether the words `consolidated for trial' as used in N.J.S. 2A:85-12, supra, shall be given their technical meaning or whether the Legislature intended a more general meaning in the use thereof"; that "* * * the convictions on July 29, 1943 were of allegations which were heard consecutively and upon conviction of which the defendant had imposed upon him concurrent sentences. The same situation obtained concerning the *566 April 26, 1945 convictions. In both instances therefore there was a `consolidation for trial' within the statutory provision. Each group of convictions therefore constituted one `conviction' on a separate `occasion' under N.J.S. 2A:85-12, supra."
In the instant case, the State points out that Culver was sentenced under the provisions of the 1940 amendment; that he had been previously convicted of three high misdemeanors, and, although the two convictions in 1940 were based upon guilty pleas entered the same day (January 26, 1940),
"Nowhere does it appear in his brief or appendix that there was ever an order for consolidation; moreover, there was no law in effect at the time of his conviction or sentence such as we find today in N.J.S. 2A:85-12, relied upon by Culver, and which provides inter alia that a conviction of two or more crimes for high misdemeanors, charged in one indictment or accusation, or in two or more indictments or accusations, consolidated for trial, shall be deemed to be only one conviction. Needless to say N.J.S. 2A:85-12, is not retroactive."
To intelligently resolve this question, reference must be made to the language employed in the 1927 amendment (incorporated in the 1937 revision as R.S. 2:103-10), and in the 1940 amendment.
In the 1927 amendment, it will be noted that the prerequisite conditions upon which a sentence of life imprisonment, in the court's discretion, might be imposed were that he had been "three times convicted of crimes enumerated in this subtitle and sentenced each time to the state prison, and has served such three sentences so imposed, or any part thereof, * * *."
Quite a significant change was made in the 1940 amendment, which required proof of convictions of high misdemeanors on "three separate occasions" (emphasis ours), and making mandatory the imposition of a life sentence upon a conviction of a subsequent offense "enumerated in this subtitle." A comparison of the language of the 1927 amendment with that of the 1940 amendment rather clearly reveals the Legislature's intention to abolish the 1927 provision requiring proof merely of three prior convictions, and to substitute *567 therefor proof of convictions on "three separate occasions" to warrant a mandatory life imprisonment sentence.
If we are to follow the State's argument, the 1940 change had no meaning whatever, except to make mandatory the imposition of a life imprisonment sentence. As stated hereinabove, our courts did not specifically construe the meaning of the words "three separate occasions" as used in the 1940 amendment, until the decision of the Appellate Division in the McCall case, supra. However, we must bear in mind, the defendant was sentenced in that case on the conviction of a fourth offense subsequent to the adoption of the 1951 amendment. It is significant that the 1951 amendment makes no material change in the first paragraph of the 1940 amendment, with respect to the prerequisite proof of convictions of high misdemeanors on "three separate occasions." As to the definition of "three separate occasions" in the second paragraph of the 1951 amendment, we do not think that the Legislature intended thereby to effect any change in the meaning of those words as used in the 1940 amendment and that it was merely a clarification of the purport thereof as used in the 1940 amendment.
Lest we be misunderstood, we make clear that our references to the McCall case, supra, are not intended as an indication of our reliance thereon as controlling here. We are mindful of the fact that the McCall decision construed the 1951 amendment  not the 1940 amendment. But we think that the references in the McCall opinion to the 1940 amendment are illuminating, particularly in view of the comments made upon the 1927 and 1940 amendments.
Two of the three convictions charged against the defendant, having been disposed of on the one occasion (January 26, 1940), (regardless of whether the record discloses an order for consolidation), were, in fact, consolidated for trial on the same occasion and may, therefore, be considered as only one conviction.
In view of the foregoing conclusions, it clearly appears that at the time of the imposition of the life imprisonment sentence in the instant case there was proof of only two separate *568 occasions upon which Culver had previously been convicted of high misdemeanors. The life imprisonment sentence was, therefore, erroneously imposed.
The defendant may apply at any time to the sentencing court for a correction of the invalid sentence so imposed upon him.
With respect to the appellant's complaint that he was not promptly arraigned and was not assigned counsel or advised of his right to counsel, we find no merit therein, particularly in view of the fact that the rule, R.R. 1:12-9 (formerly Rule 1:2-31), had not been adopted at that time. See State v. Cynkowski, 10 N.J. 571 (1952) and State v. Gladstone, 17 N.J. Super. 467 (App. Div. 1952), where adverse rulings were made to similar contentions.
While not affecting the issue here, it is interesting to note that the Legislature amended N.J.S. 2A:85-12 in 1953 (L. 1953, c. 166, sec. 3), wherein it provides that a person convicted on three separate occasions for high misdemeanors and "who thereafter is convicted of a misdemeanor or a high misdemeanor under the laws of this State, is hereby declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, may impose upon the person so convicted a sentence in the State Prison for any term of years or for life."
We find no merit in the other grounds of appeal.
Judgment reversed.
SMALLEY, J.S.C. (temporarily assigned) (dissenting).
That I have difficulty in grasping the views expressed in the majority opinion is partially understood by a reading of State v. McCall, supra.
The appellant Culver was sentenced on December 23, 1947 under the provisions of the Habitual Criminal Act as amended by the provisions of the 1940 enactments which reads as follows:
"Any person who on three separate occasions has been convicted of high misdemeanors in this State, or of crimes under the *569 laws of the United States or of any other State or country, which crimes would be high misdemeanors if committed in this State, or whose convictions for such offenses in this State or under the laws of the United States or of any other State or country shall total three or more, and who shall thereafter be convicted of a subsequent offense enumerated in this subtitle, is hereby declared to be an habitual criminal, and the court in which such fourth or subsequent conviction is had, shall impose a life sentence in the State Prison upon the person so convicted." (Emphasis supplied.)
Initially it is necessary to observe that the defendant's contentions must be analyzed and considered in the light of what the provisions of the statute were at the time he was sentenced, and not what they were after the amendments of 1951 and 1953.
Much has been written concerning the words "three separate occasions." I did not understand the Legislature meant by the words "three separate occasions," at least up until the amendment of 1951, that they were referring exclusively to what transpired in the court room, such as to trial, sentence and pleas. Rather, I thought the Legislature was saying then that, if an offender on a certain day committed a high misdemeanor and then on a subsequent day committed another like offense, and so on, until he had committed the required number of violations, he would then be brought within the category of being a fourth offender. His conviction on this charge was valid, notwithstanding that he may have pled or had been convicted for the various offenses on any one given day.
Assuming that the individual during the time that the 1940 amendment was in effect committed a hold up in Plainfield in January 1947, another in Westfield in March, another in Cranford in June, and then finally robs a bank in Elizabeth in August, all in the same year. He is then indicted on four separate indictments. He pleads guilty to all indictments or accusations on one day in 1947 in the Union County Court. Can it be said that this means in the counting of the convictions that this individual can only have one conviction against him for the consideration of whether or not he was an habitual offender?
*570 The 1940 amendment, I think, is to the contrary. Assume further that the same individual entered a plea of guilty to one of these indictments on a Friday morning, stood trial on the following indictments or entered pleas to the remaining indictments, at the rate of one a week, until all pleas, totalling four, have been entered. Is it then to be held that because of such arrangement in the moving of the indictments by the prosecutor that this maneuver would then make the individual subject to life imprisonment? I do not believe that the Legislature intended to put into the hands of the prosecutor such a power or authority that would make the liberty of an individual subject to his whim and caprice. It may as well be argued that a prosecutor might, by consolidating indictments into one trial, or by the acceptance of a long list of pleas on any one day, give such preference or special consideration to some person charged with such a list of serious crimes, which preferential treatment was never deemed to be within his power or the court's discretion. What did put the individual in jeopardy of life imprisonment, or to be convicted as a fourth offender, was what he did in so far as the committing of high misdemeanors outside the court room, not what happened inside as to the processing of indictments.
It seems apparent that the Supreme Court reversed State v. McCall, supra, because of the 1951 amendment to the 1940 act, as is evidenced by their construing the intent of the Legislature in enacting the 1951 amendment. As Justice Burling stated on page 547:
"It is well settled that in construing a statute it is to be assumed that the Legislature was and is thoroughly conversant with its own legislation and the judicial construction thereon."
Therefore the Legislature, having deemed that modification was necessary, and being aware of the judicial construction of the 1940 act, amended it in 1951 by changing the introductory line and by adding the following paragraph.
"Conviction of 2 or more of such crimes or high misdemeanors charged in 1 indictment or accusation, or in 2 or more indictments *571 or accusations consolidated for trial shall be deemed to be only 1 conviction."
Justice Burling further states the above paragraph is clear. "It is an embodiment of the amelioration philosophy subsequently expressed in the Report to Governor Alfred E. Driscoll of the Committee to Examine and Investigate the Prison and Parole Systems of New Jersey."
The 1951 amendment being the crux of the reversal of the McCall case, and being the pivotal point, upon which the philosophy of treating recidivists has now turned again, cannot, of necessity, relate back to occurrences and consequent judicial proceedings prior to its enactment. To do so would give effect to the 1951 amendment 11 years prior to its enactment and would be inconsistent and contrary to the opinion of the Supreme Court in the McCall case.
I vote to affirm.