TURCO PRODUCTS, INC., A CORPORATION, PLAINTIFF-RESPONDENT, v. HYDROCARBON CHEMICALS, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT, AND MONTROSE CHEMICAL CO. (INC.), A CORPORATION OF NEW JERSEY, DEFENDANT.

TURCO PRODUCTS, INC., A CORPORATION, PLAINTIFF-RESPONDENT, v. HYDROCARBON CHEMICALS, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT, AND MONTROSE CHEMICAL CO. (INC.), A CORPORATION OF NEW JERSEY, DEFENDANT.

Argued March 7, 1955—Decided March 28, 1955.

*Mr. James D. Carpenter* argued the cause for appellant (*Messrs. Carpenter, Gilmour & Dwyer*, attorneys).

*Mr. Huyler E. Romond* argued the cause for respondent (*Messrs. Toolan, Haney & Romond*, attorneys).

The opinion of the court was delivered by

WACHENFELD, J. The appellant, Hydrocarbon Chemicals, Inc., appeals from (1) an order refusing to vacate or modify a final judgment entered January 20, 1954, restraining it from (a) closing or obstructing a right-of-way extending from the plaintiff Turco's property to Lister Avenue, more particularly described in a certain written agreement dated June 30, 1930; (b) from interfering with the free and unrestricted use of said right-of-way; (c) ordering the defendant to remove the post, gates and poles erected by it upon or across said right-of-way; and (2) an order finding it guilty of civil contempt for failure to comply with said judgment.

Both appeals are included in one record pursuant to an order of the court made below and were certified here on our own motion prior to argument in the Appellate Division.

By agreement dated June 30, 1930 three corporations, M. A. C. Corporation, Swan Finch Oil Corporation and

American Agricultural Chemical Company, each of which then owned adjoining property lying between Lister Avenue in Newark and the Passaic River, established a right-of-way across their respective properties for their common use. The easement was granted for the period of 30 years from the date of the agreement, and the agreement was duly recorded in the Essex County Register's Office.

Subsequently, the M. A. C. Corporation conveyed its property to Hydrocarbon Chemicals, Inc., the present appellant; the Swan Finch Oil Company conveyed its property to the respondent, Turco Products, Inc., and the American Agricultural Chemical Company conveyed its property to Montrose Chemical Company, admitted to the action as a party plaintiff, although it had been named in the original complaint as a defendant.

The easement in question, as specified in the agreement already referred to, is approximately 19 feet wide and 300 feet long. It runs from the northerly side of Lister Avenue in a north-northeasterly direction along the westerly line of Hydrocarbon Chemicals' property to provide an entrance at its northerly terminus into the rear of Turco Products' property.

The building of the appellant, Hydrocarbon, is erected very close to the easterly line of the easement near its Lister Avenue end. Opposite Hydrocarbon's building and along the westerly line of the easement, Montrose Chemical Company has erected a high wire fence with barbed wire along the top enclosing its property.

The easement in the paragraph of the agreement already referred to provided for "a concrete road over the full extent of the right-of-way tracts herein granted by the parties hereto" and the grantor provided "it will promptly build and maintain the said concrete road during the duration of this indenture at its own expense and that the said road shall be built and maintained in a condition suitable for all the year round heavy trucking."

The road was constructed and maintained without any ensuing difficulty between the parties until August 1951,

when the appellant, Hydrocarbon Chemicals, caused to be erected two posts, one on either side of this easement, at the Lister Avenue entrance and in line with the front fence of Hydrocarbon Chemicals, Inc. Each of these posts was four feet square and seven feet high and was constructed of steel I-beams and concrete faced with brick. The westerly post protrudes approximately one foot into the right-of-way, while the easterly post is entirely on the property of defendant Hydrocarbon. Attached to each post was a swing gate which when closed and padlocked completely blocked the entrance of the right-of-way.

From August 1951 to January 1952 the defendant made no effort to close off the right-of-way by locking the gates, and it is evident from the record there were negotiations going on between the parties attempting to eliminate the threatened litigation.

In any event, on December 28, 1951 the attorney of Hydrocarbon wrote a letter to Turco stating it would close the right-of-way to any and all trucks going to and from plaintiff Turco's plant.

In January 1952 Turco Products brought an action in the Superior Court, Chancery Division, to enjoin Hydrocarbon from closing the right-of-way and obtained a preliminary injunction restraining it from obstructing or interfering with the use of the right-of-way by Turco. Subsequently, Montrose Chemical Company was admitted to the action as a party plaintiff.

After the defendant answered, a pretrial order was entered directing the trial be limited to three issues: (1) the rights of the respective parties under the agreement of June 30, 1930; (2) whether Hydrocarbon should be restrained from obstructing the use of the right-of-way; and (3) whether Hydrocarbon should be required to remove any obstruction in the right-of-way.

All parties agreed the issues involved were questions of law and the cause was accordingly submitted to the court below on the pleadings and the documentary evidence. The

court entered a final judgment in favor of the plaintiffs Turco and Montrose.

The judgment provided that Hydrocarbon be restrained from closing or obstructing the right-of-way extending to Turco's property and from interfering with Turco's "free and unrestricted use of the right-of-way." It also directed Hydrocarbon to remove the "post, gates and poles or any part thereof" located upon or across the right-of-way.

No appeal was taken from the final judgment, and present counsel for Hydrocarbon "were retained after the time to appeal had expired and after it had discovered that the cost of removing the westerly post that encroached on the right-of-way approximately one foot would be $2,240."

Following the entry of the final judgment, Hydrocarbon did not remove the westerly post which was located in the right-of-way or the gates themselves but instead pursued a policy of closing these gates between the hours of 5:30 P. M. and 7:30 A. M. and on Saturdays, Sundays and holidays. Turco thereupon filed a notice of motion to hold the defendant in contempt, which motion was made on March 31, 1954 and adjourned to May 7, 1954.

On the latter date, Hydrocarbon moved for an order modifying the restraint, requesting that it be permitted to close the entrance gates during the hours when the right-of-way was not being used by Turco. On June 29, 1954 Hydrocarbon's motion to modify the judgment was dismissed, no disposition being made of Turco's contempt motion.

Following the dismissal of its motion, Hydrocarbon still failed to comply with the judgment and continued to close the gates during the hours related aforesaid and did not remove the westerly post.

On October 1, 1954 Turco again made a motion to hold the defendant in contempt for failure to remove the post and for continued interference with its use of the right-of-way. Hydrocarbon thereupon moved to modify the judgment so as to permit it to maintain the westerly post and keep the gates closed except during regular business hours of the plaintiff.

In support of the relief asked, Hydrocarbon filed an affi-

davit setting forth that it operates a chemical plant at which it stores an extensive quantity of explosive materials and maintains costly equipment. It alleged there was great danger of vandalism, making it necessary to keep the gates closed to prevent trespassers from entering upon its property and damaging the equipment or possibly starting fires.

The affidavit also stated Turco had no real need for the right-of-way outside of its regular business hours of 7:30 A. M. to 5:30 P. M. and that Hydrocarbon should therefore be permitted to close off the right-of-way during non-business hours.

Turco countered with an affidavit answering these assertions and insisting it had occasion to use the right-of-way during non-business hours and that the closing and padlocking of the gates obstructed its business operations.

The judge who had entered judgment at the original hearing was ill and the matter came before another judge on October 7, 1954, who denied Hydrocarbon's application to modify the judgment and entered an order holding it in contempt of court for failure to comply with the judgment of January 20, 1954 and gave it 60 days in which to remove the gates and the westerly post. He, however, ordered the operation of the order stayed upon the filing of an appeal to the Appellate Division.

In denying Hydrocarbon's motion to modify, the court below pointed very significantly to the fact that the appellant had not presented any new evidence which would justify a modification of the judgment or relieve it of the consequences of its contempt. On oral argument, when counsel was inquired of as to whether or not there was anything new factually on his motion to modify, he frankly answered, in accord with the record, "Nothing."

Nevertheless, the appellant now insists the judgment goes too far in forbidding the closing of the gates at night and on holidays and Sundays and in requiring the removal of the post and gates, despite the plaintiff's laches in not objecting to their erection, and succor is sought in *R. R.* 4:62–2, or at least in that portion of it which provides relief may be

given where "it is no longer equitable that the judgment or order should have prospective application" or for "any other reason justifying relief from the operation of the judgment or order."

But it is undisputed that the appellant, when it purchased the property, was fully cognizant of the right-of-way agreement and the easement which existed, and it likewise has failed to show a subsequent alteration in the rights or interest of the parties or a change of circumstances which would make continued enforcement of the injunctive process inequitable, oppressive and unjust or in contravention of the policy of the law.

Even apart from the rule above cited, equity has inherent jurisdiction to vacate or modify an injunction when it comes within the realm of the circumstances above enumerated. *Johnson & Johnson v. Weissbard,* 11 *N. J.* 552 (1953).

Our rule is fashioned after *Rule* 60 of the *Federal Rules of Civil Procedure,* under which it has oft been held the court will not on such a motion modify an injunction in the absence of a showing of subsequent change. In *U. S. v. Swift & Co.,* 286 *U. S.* 106, 119, 52 *S. Ct.* 460, 76 *L. Ed.* 999 (1932), the court commented:

"There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. We are not at liberty to reverse under the guise of readjusting."

*Morse-Starrett Products Co. v. Steccone,* 205 *F.* 2d 244, 249 (9 *Cir.* 1953), expressed the view that:

"The provisions of rule 60(*b*)(6) were not intended to benefit the unsuccessful litigant who long after the time during which an appeal from a final judgment could have been perfected first seeks to express his dissatisfaction. The procedure provided by rule 60(*b*) is not a substitute for an appeal." See *Ackermann v. U. S.,* 340 *U. S.* 193, 71 *S. Ct.* 209, 95 *L. Ed.* 207 (1950).

There is nothing before us showing the original judgment was unjust or should be altered. The respondent under the 1930 agreement was entitled to the full, unobstructed use of the right-of-way, of which the appellant was fully aware, and no valid reason has been advanced justifying a limitation or restriction not heretofore imposed.

The appellant also contends it should not have been adjudged in contempt, based upon the theory that the judgment "went far beyond what was necessary to establish plaintiff's rights in the easement and to protect the use thereof to which plaintiff was entitled" as "there is not a word in the easement requiring it to be kept open at all times."

This, in substance, is a collateral attack upon the judgment itself. If there was error in this respect, its correction was remediable on appeal, but admittedly none was taken. Quite to the contrary, counsel, on the effort to modify the injunction, conceded if he did not prevail, "then we are in contempt."

Accordingly, we find no merit in either appeal. The orders below are affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.