47 N.J. Super. 391 (1957)
136 A.2d 1
RUDOLF WORBETZ, PLAINTIFF-APPELLANT,
v.
GEORGE F. GOODMAN, WARDEN, NEW JERSEY STATE PRISON, TRENTON, NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 7, 1957.
Decided November 13, 1957.
*395 Before Judges CLAPP, JAYNE and HUGHES.
Mr. Rudolf Worbetz, appellant, pro se.
Mr. Leon Gerofsky, Prosecutor of Somerset County, attorney for respondent (Mr. David G. Lucas, on the brief).
The opinion of the court was delivered by HUGHES, J.A.D.
A writ of habeas corpus was issued by the Somerset County Court on May 13, 1957 and after full hearing thereon, it was discharged and the prisoner remanded, which judgment comes before us on this appeal. We granted leave to appeal in forma pauperis and the appellant, though confined in the New Jersey State Prison, directs his claims to our attention by briefs which are lacking neither in fullness of content nor in adequacy of legal presentation. We note initially, from the transcript of evidence taken at the habeas corpus hearing (at which the prisoner was assisted by counsel assigned to him as an indigent person) and the carefully reasoned opinion of Judge Halpern of that court, the full performance of that obligation to which our courts have been exhorted with increasing emphasis in recent times, the exercise of zeal in the procedural protection of legal and constitutional rights, particularly those involving human freedom. State v. Piracci, 14 N.J. Super. 319 (App. Div. 1951); State v. Ballard, 15 N.J. Super. 417 (App. Div. 1951), affirmed 9 N.J. 402 (1952); State v. Cynkowski, 10 N.J. 571 (1952); State v. Lenkowski, 24 N.J. Super. 444 (App. Div. 1953).
The appellant previously has called to the attention of several courts his views as to the validity of the concurrent life sentences being served by him, which had been imposed in the former Somerset County Court of Special Sessions in 1947. In 1953 he petitioned the Law Division, Superior Court, Somerset County, for a writ of habeas corpus, on broad allegations that he had suffered a denial of constitutional right in that he had been deprived of the assistance *396 of counsel in his defense. This application was denied as insufficient to justify issuance of the writ and hearing thereon, despite a contemporary climate of caution invoked by decisions of our appellate courts discouraging the denial of the writ without hearing, abandoning the rule of In re Tremper, 126 N.J. Eq. 276 (Ch. 1939) (which withheld the writ under circumstances of long and unexplained delay in seeking it) (State v. Piracci, supra; In re Hodge, 17 N.J. Super. 198 (Cty. Ct. 1951), affirmed 24 N.J. Super. 564 (App. Div. 1953); State v. Walters, 19 N.J. Super. 597 (App. Div. 1952); State v. Cynkowski, supra; State v. Lenkowski, supra), and placing particular emphasis upon the implications of the constitutional right to the assistance of counsel (Zasada v. State, 19 N.J. Super. 589 (App. Div. 1952)). On appeal to this court, however, such denial of the writ was approved (State v. Worbetz, February 25, 1954, Docket No. A-198-53) and our Supreme Court affirmed on the basis of that decision (State v. Worbetz, 17 N.J. 569 (1955)). The United States Supreme Court denied certiorari. Worbetz v. State of New Jersey, 349 U.S. 941, 75 S.Ct. 787, 99 L.Ed. 1268 (1955).
There followed a petition for writ of habeas corpus to the United States District Court which denied the writ on June 30, 1955, and application for certificate of probable cause for appeal from the denial of such application was denied by order of the Third Circuit Court of Appeals by Judge McLaughlin on July 26, 1955.
While the principle of res adjudicata is not strictly applicable to proceedings involving the Great Writ, since a prisoner is not limited to but one opportunity to regain his freedom (Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948)), it is settled that the previous litigation is subject to scrutiny on the new application for relief and that the court may consider relevant earlier judicial findings on issues common to both (Salinger v. Loisel, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989 (1924); Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924); United States ex rel. Bergdoll v. *397 Drum, 107 F.2d 897, 129 A.L.R. 1165 (2 Cir. 1939), certiorari denied 310 U.S. 648, 60 S.Ct. 1098, 84 L.Ed. 1414 (1940)).
The abuse of the writ by repeated applications, noted with concern by Judge Learned Hand in United States ex rel. McCann v. Thompson, 144 F.2d 604, 156 A.L.R. 240 (2 Cir. 1944), certiorari denied 323 U.S. 790, 65 S.Ct. 313, 89 L.Ed. 630 (1944), was curtailed in the federal jurisdiction by a statute which Congress was constrained to enact for that purpose in 1948 (62 Stat. 965 (1948), 28 U.S.C. 2244 (1952)). While we have here no statutory counterpart to achieve finality in this type of litigation, although similar abuses of the writ have become apparent (State v. Bey, 29 N.J. Super. 331 (App. Div. 1954)), our courts have not hesitated to "ascribe influential, but not necessarily controlling, weight to the findings in the prior proceeding" (State v. Fontano, 26 N.J. Super. 166 (App. Div. 1953), affirmed sub. nom. State v. Fontana, 14 N.J. 173 (1954); State v. Janiec, 15 N.J. Super. 445 (App. Div. 1951), certiorari denied 342 U.S. 894, 72 S.Ct. 203, 96 L.Ed. 670 (1951); State v. Pohlabel, 40 N.J. Super. 416 (App. Div. 1956)), in an exercise of their undoubted power to protect this privileged writ of freedom from pollution by the filing of successive and repetitious applications therefor by a pertinacious relator (In re Sabongy, 18 N.J. Super. 334 (Cty. Ct. 1952); State v. Jefferson, 40 N.J. Super. 466 (App. Div. 1956); Kline v. State, 41 N.J. Super. 391 (App. Div. 1956)).
Our panoramic scrutiny of such prior proceedings, not only permitted but encouraged by the foregoing authorities, reveals to us the common thread of appellant's insistence that fundamental rights of due process, to which he was entitled under the Fourteenth Amendment to the United States Constitution, were invaded in the events leading to his conviction, particularly because of the deprivation of counsel. This contention, however, in its present frame, may not be considered in the comparative factual vacuum of a showing of the mere absence of counsel, of the failure *398 of the court to offer counsel, nor even, arguendo, of the truth of his repeated protestations that he was ignorant of his right to be represented by counsel. Otherwise, and without more, we would now be justified in dismissing his appeal, for that skeletal question has been settled in the courts (State v. Worbetz, 17 N.J. 569, and other litigation references, supra). But the asserted interrelation of such lack of counsel at the time of his pleas and sentences, with the peculiar characteristics of our Habitual Criminal Act (R.S. 2:103-10, amended L. 1940, c. 219, § 3, substantially reenacted in N.J.S. 2A:85-12; vide, In re Caruso, 10 N.J. 184 (1952)), in the setting of entry of pleas exposing the accused to life imprisonment, invokes a broader inquiry, albeit one not uninfluenced by relevant prior findings. This is so because, although neither the statutory nor decisional law of our State imposed any obligation upon the court in 1947 to advise a defendant affirmatively of his right to counsel (State v. Raney, 63 N.J.L. 363 (Sup. Ct. 1899); State v. Murphy, 87 N.J.L. 515 (E. & A. 1915); State v. Cynkowski, supra; State v. Worbetz, 17 N.J. 569, supra), the appellant in the proceeding sub judice seeks to bring himself within the class of cases projecting such deprivation of constitutional right as to destroy the very jurisdiction of the court to act (Johnson v. Zerbst, Warden, etc., 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); In re Carter, 14 N.J. Super. 591 (Cty. Ct. 1951); Zasada v. State, supra).
The Sixth Amendment to the Federal Constitution assures the accused, in all criminal prosecutions, of the right to have the assistance of counsel in his defense. Although such amendment applies only to trials in federal courts and has, in itself, no application to the states, and while the due process clause of the Fourteenth Amendment does not incorporate, as such, the specific guarantees found in the Sixth Amendment, it is undoubted that a denial by a state of rights or privileges embodied in that and others of the first eight amendments may, in certain circumstances or in connection with other elements, operate, in a given case, to *399 deprive a litigant of due process of law in violation of the Fourteenth Amendment. While due process of law is secured against state invasion by the Fourteenth Amendment, it has been commented that its language formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application has been viewed less as a matter of rule than as a matter of principle. An asserted denial of due process is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may in other circumstances, and in the light of other considerations, fall short of such denial. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942); Foster v. People of State of Illinois, 332 U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955 (1947); Bute v. People of State of Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986 (1948); Uveges v. Commonwealth of Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948); Gibbs v. Burke, 337 U.S. 773, 69 S.Ct. 1247, 93 L.Ed. 1686 (1949); State v. Miller, 16 N.J. Super. 251 (App. Div. 1951); In re Sabongy, supra; Zasada v. State, supra; State v. Raicich, 30 N.J. Super. 316 (App. Div. 1954); State v. Flood, 32 N.J. Super. 161 (App. Div. 1954); State v. Mastic, 20 N.J. 428 (1956). Deprivation of counsel in the constitutional sense is equally applicable to the entry of a plea equivalent to that of guilt as it is to the incidents of conventional trial (Uveges v. Commonwealth of Pennsylvania, supra; Palmer v. Ashe, Warden, etc., 342 U.S. 134, 72 S.Ct. 191, 96 L.Ed. 154 (1951); State v. Gladstone, 17 N.J. Super. 467 (App. Div. 1952); Kokinda v. Carty, 30 N.J. Super. 253 (App. Div. 1954); State v. Rose, 40 N.J. Super. 40 (Cty. Ct. 1956), affirmed 41 N.J. Super. 434 (App. Div. 1956); State v. Forsythe, 42 N.J. Super. 275 (App. Div. 1956)), and such deprivation is of like significance whether it is accomplished by threat (Uveges v. Commonwealth of Pennsylvania, supra), inadvertence (In *400 re Carter, supra), pressure of judicial business (People v. Gordon, 262 App. Div. 534, 30 N.Y.S.2d 625 (App. Div. 1941)), mistake (Wilfong v. Johnston, Warden, etc., 156 F.2d 507 (9 Cir. 1946)), haste (Poindexter v. State, 183 Tenn. 193, 191 S.W.2d 445 (Sup. Ct. 1946); United States v. Bergamo, 154 F.2d 31 (3 Cir. 1946)), conflict of interest (Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Noble v. Eicher, 79 U.S. App. D.C. 217, 143 F.2d 1001 (1944)), or trick (Curtis v. Humphrey, 84 F. Supp. 969 (D.C. Pa. 1949)).
To assess the "totality of facts" here in the light of which the alleged deprivation of constitutional right must be considered, we review the non-issuable factual circumstances gleaned from the record. The arrest of appellant on November 24, 1947 on charges of armed robbery, a high misdemeanor, in violation of R.S. 2:166-1, R.S. 2:176-5 (now N.J.S. 2A:141-1, N.J.S. 2A:151-5) was culminant to a career of crime which had included convictions for high misdemeanors (R.S. 2:103-5, now N.J.S. 2A:85-6) in 1940, 1942, 1943 and 1944. While in county jail he signed three separate waivers of his right to indictment and trial by jury, each referable to a charge of armed robbery and of "being an habitual criminal," and applied for immediate trial before the former Court of Special Sessions, in accordance with the practice then existing. R.S. 2:191-1 (not reenacted in the revision of Title 2 of the Revised Statutes, now constituting Title 2A, "Administration of Civil and Criminal Justice"). The prosecutor having joined in such applications, and the Special Sessions judge having approved them, three allegations (presently called "accusations," R.R. 3:4-2 et seq.) were filed, each charging appellant in the plainest terms with a separate substantive offense of armed robbery and of having suffered some seven prior convictions for high misdemeanors, a recital in each of such allegations reading, in part, as follows:
"Rudolph Worbetz, having been charged * * * with Armed Robbery, and having also been charged with being an Habitual Criminal * * *."
*401 Appellant appeared before the court on December 23, 1947 to plead to these allegations, and we refer to the record of such proceeding anent the credibility of his present disavowal of an understanding of the significance thereof. The allegations being read to him separately and at length, he was reminded by Prosecutor Gerofsky as to each that he was thereby charged with "Armed Robbery and Habitual Criminal." He thereupon entered a plea of guilty as to each. This significant colloquy ensued:
"Court: Plea of guilty may be entered.
Mr. Gerofsky: I wish to move for sentence. Worbetz's record is not in the least encouraging to society insofar as his freedom is concerned. Worbetz pleads guilty here to an offense upon which the Court has no alternative but to sentence him to State Prison for life. I call your attention to the fact that before Worbetz appeared in this Court now, Detective Navatto fully apprised him of the consequences of his act in entering a plea. He is well aware of the Court sentence. He is fully appreciative of all of the details of the charges and the seriousness of the act of his entering a plea of guilty to all of these charges. He has been fully advised and offered every opportunity to seek independent advice. He indicated his willingness to appear in court to plead. He indicated his appreciation for knowledge of the seriousness of his offense. I move for sentence. Recommend that he be committed to sentence for life.
Court: Have you anything to say?
Mr. Worbetz: No.
Court: That is perhaps understandable. There is little that can be said in your behalf. The previous record as recited in the allegations read to you  previously convicted of seven high misdemeanors, the last in 1944, for which you were sentenced for a term of 4 to 5 years. Only been at liberty for a short period of time and you are now before the court charged with three different violations of the law, one of the most serious charges that can be preferred against an individual under the laws of our State. It is fortunate for you, perhaps more fortunate for the other people you robbed at the point of a gun, that you do not stand here charged with murder because you were equipped to do murder if the occasion presented itself. You understand, Worbetz, that, as a result of the pleas you entered as a result of the allegations made against you, that the statute imposes upon the Court a mandatory duty of sentencing you to life in State Prison. The sentence, therefore, is that you serve a life term in State Prison on each of the allegations to run concurrently."
*402 We have suggested the identity, in gross aspect, of the underlying contentions of appellant in all of the proceedings instituted by him, including that sub judice, that the lack of counsel, in the circumstances leading to his sentences, portrayed such a denial of fundamental fairness, shocking to the universal sense of justice, as to oust the court of its jurisdiction to impose them. That claim previously was accompanied by collateral assertions. One was that of double jeopardy, in that two of the allegations upon which he was sentenced embraced the armed robbery of two victims on the occasion of the same hold-up, and the assertedly dichotomous reflection of a single act-offense in separate accusations. State v. Cooper, 13 N.J.L. 361 (Sup. Ct. 1833); State v. Pennsylvania Railroad Co., 9 N.J. 194 (1952). But this ground not only was rejected, with the approval on appeal of our Supreme Court (State v. Worbetz, 17 N.J. 569, supra), but is untenable under our existing rule, in the case of separate contemporaneous victims of robbery (State v. Hoag, 35 N.J. Super. 555 (App. Div. 1955), affirmed 21 N.J. 496 (1956)). Again, appellant had contended in 1953 that the habitual offender legislation, in its application to him, was ex post facto because of legislative alteration in the nature of prior offenses bringing it into operation. Here too, not only is the 1953 rejection of this argument of significance, but the suggestion in itself is specious. In re Zee, 13 N.J. Super. 312 (Cty. Ct. 1951), affirmed State v. Zee, 16 N.J. Super. 171 (App. Div. 1951), certiorari denied 343 U.S. 931, 72 S.Ct. 766, 96 L.Ed. 1340 (1952); In re Caruso, supra.
Beyond these specific objections the gravamen of appellant's case as presented to the state and federal courts above mentioned, involved the constitutional point concerning his deprivation of counsel, and it was put to the United States District Court in these strong terms:
"3. My imprisonment is illegal and unconstitutional in that petitioner was denied due process of law and equal protection of the laws by reason that petitioner was denied the Assistance of Counsel for his defense * * *."
*403 There was elicited from the learned judge of the United States District Court, in the deliberate exercise by him of federal jurisdiction acquired in view of the previous exhaustion by appellant of state remedies for relief on this point, the following determination:
"* * * In view of the fact that this petitioner, at the time of his arraignment was 25 years old and had a previous record of multiple convictions for high misdemeanors, it is inconceivable that he was so unsophisticated in the law as not to have had some concept of his right to counsel and the meaning of his pleas of guilty. In the light of his extensive experience with the law there is no allegation on the face of this application to justify a determination that there has been an infringement of his fundamental rights."
As stated, a judge of the Third Circuit Court of Appeals coincided with these views, detecting no probable cause for appeal. Not less forcefully, appellant had addressed this claim to the New Jersey courts, all of which expressed equal skepticism. State v. Worbetz, 17 N.J. 569, supra.
In the present application the appellant offers additional support for his continuing claim of unconstitutional mistreatment by documenting his school record, showing the lapse of his formal education after the fourth grammar school grade, and stressing that he was helpless before the court because of his comparative ignorance; attributing the waiver of his right to indictment and jury trial to alleged false and coercive blandishments of a chief county detective; denying his cognizance that his admission of an habitual offender status would expose him to heavier punishment nor even, indeed, that such status was charged against him or admitted by him; and excusing his silence in the face of the allocution which preceded the pronouncement of sentence by the court, on the basis that he was too "shocked and stunned" upon realizing that he was facing life imprisonment to speak in answer to the court's invitation. All of these matters were fully explored at the instant habeas corpus hearing and we agree that the coincidence of the factual opinion of the court there with the views of other courts expressed in the litigation which had gone before, was not only supported by the evidence, *404 which we have examined, but was fully concordant therewith. It is, accordingly, determined that appellant was not deprived of counsel in the constitutional sense, that the acceptance of his pleas of guilt and the life sentences respectively imposed were free of any element of unfairness or injustice which could be said to bring those proceedings within the orbit of the Fourteenth Amendment, and consequently that the jurisdiction of the sentencing court was intact in all respects.
This brings us to the consideration of asserted legal error in the pleas and sentences, which we consider broadly as within the reach of this proceeding (cf. R.R. 3:7-13, 15) to achieve, if possible, finality of disposition. Intermingled with the fundamental constitutional claim to which we have adverted, the appellant denies that life sentences were mandatory, as thought by the sentencing court, under the habitual criminal legislation. The original act (L. 1927, c. 263, § 1, p. 483; R.S. 2:103-10, supra) defining habitual criminality in this degree, left the imposition of life sentence permissive, as within the discretion of the court. The amended act (L. 1940, c. 219, § 3, p. 889; R.S. 2:103-10, supra), in effect at the time of appellant's sentences, made such life sentence mandatory, and this formula was reenacted in Title 2A, "Administration of Civil and Criminal Justice"; N.J.S. 2A:85-12, supra. Although of no present concern, it may be noted that by later amendment the imposition of the life sentence has again become permissive rather than mandatory. L. 1953, c. 166, § 3, p. 1427; N.J.S. 2A:85-12, supra. The court in 1947 was, therefore, required to impose the life sentences complained of, unaffected by the provision of the reenactment dealing with multiple crimes charged in one or in consolidated indictments. State v. Quatro, 40 N.J. Super. 111 (Cty. Ct. 1956).
The appellant next denies that his single plea to each of the respective allegations reached, or was intended to embrace, the added "offense" of being an "habitual criminal," invoking the rule that validity of conviction depends upon the effective joinder of issue by specificity of plea. *405 State v. Brennan, 83 N.J.L. 12 (Sup. Ct. 1912). But this argument is based upon the misconception that the alleged status of habitual criminality charges an "offense," the fallacy of this argument having long since been settled (McDonald v. Commonwealth of Massachusetts, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901); Graham v. State of West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912); Carlesi v. People of State of New York, 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914); In re Zee, supra), inasmuch as the averment of the former convictions is only matter of aggravation permitting the court to impose the enhanced punishment ordained by the legislative will, in the case of the convicted recidivist, for the substantive offense presently dealt with (State v. McBride, 15 N.J. Super. 436 (App. Div. 1951)).
Again, the appellant asserts an invasion of constitutional right in the denial of a separate hearing or trial upon the habitual offender status alleged, as though he had been confronted therewith abruptly on oral accusation and forced to trial thereon, as in Chandler v. Fretag, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954), or condemned on the basis of judicial notice in an informal procedure incident to sentence on the substantive conviction, as in State v. Janiec, 9 N.J. Super. 29 (App. Div. 1950), affirmed 6 N.J. 608 (1951), certiorari denied 341 U.S. 955, 71 S.Ct. 1007, 95 L.Ed. 1376 (1951). Our former Supreme Court held in State v. Lutz, 135 N.J.L. 603 (Sup. Ct. 1947) that the imposition of enhanced punishment upon the basis of habitual criminality must be in accordance with due process, namely, that "The procedure must accord with the convict's fundamental right to be heard on notice as to his liability to the heavier penalty which may be inflicted only upon persistent offenders of the statutory category." State v. Burns, 135 N.J.L. 386 (Sup. Ct. 1947); Chandler v. Fretag, supra. Although the statute now provides for an independent hearing on the issue of habitual criminality (N.J.S. 2A:85-13, as amended L. 1953, c. 166, § 4, p. 1427), the previous conviction upon which the increased *406 sentence will rest may be alleged in the main indictment and established at trial, and an independent proceeding to adjudicate defendant to be an habitual criminal is unnecessary. A plea of guilty or admission of the prior convictions at trial waives the need for formal proof by the State. State v. Cubbler, 4 N.J. Super. 297 (App. Div. 1949), certiorari denied 339 U.S. 939, 70 S.Ct. 670, 94 L.Ed. 1356 (1950), rehearing denied 339 U.S. 959, 70 S.Ct. 975, 94 L.Ed. 1369 (1950), certiorari denied 342 U.S. 956, 72 S.Ct. 630, 96 L.Ed. 710 (1952).
The appellant next refers to certain safeguards, some formally provided by statute and others which have been focalized in our new Rules Governing the New Jersey Courts, effective September 15, 1948, with the salutary purpose of assuring full recognition of constitutional right in the field of criminal procedure, which he contends were omitted to his disadvantage. R.S. 2:188-4, not reenacted in the revision of Title 2A, supra, but spelled out more broadly in R.R. 3:5-1, concerns the delivery to accused of copy of indictment or accusation before arraignment. Violation thereof was unsupported by the hearing proofs. R.S. 2:138-3 (now N.J.S. 2A:113-3), concerning plea to an indictment for murder, and R.S. 2:189-5 (not reenacted in the revision but embraced in R.R. 3:5-2(b)), referring to the entry of not guilty plea when defendant stands mute, are irrelevant to the situation here. The failure of the court in 1947 to explore the understanding and voluntary nature of the offer of the pleas of guilt, now required by R.R. 3:5-2(a), was, under the circumstances we have discussed, not so unfair to accused as to affect the jurisdictional integrity of the court. The omission of the statutory citation on the allegations, a practice refinement secured by R.R. 3:4-3(a), did not react to appellant's disadvantage in view of the clarity of the charge stated to him. We have considered every other form of caveat expressed by appellant in the instant appeal and find them to be without substance, in view of our supervening determination that in no respect *407 did the basic proceedings collide with any element of his constitutional right.
We are constrained to agree with the determinations of all courts before which these questions have been bruited, upon the whole fabric of the proofs before us, particularly with the findings that the courtroom sophistication of this recidivist far outweighed the disadvantage of his lack of formal education. In fact, we sense the use of perceptive reasoning by him in his decision to enter pleas entailing life sentence, as presenting a somewhat more favorable prognosis for parole release, or release upon the license to be at large issued by the former Court of Pardons (R.S. 2:198-1 et seq., repealed L. 1949, c. 18, § 6, p. 63; In re New Jersey Court of Pardons, 97 N.J. Eq. 555 (Advisory Opinion of the Chancellor, 1925); State v. Barth, 114 N.J.L. 112 (E. & A. 1935)), than would have been his exposure to sentences for minimum and maximum terms of imprisonment on the substantive robbery charges (R.S. 2:192-4, now N.J.S. 2A:164-17), were he convicted thereon. Each such sentence could have entailed a maximum of 15 years (R.S. 2:166-1, now N.J.S. 2A:141-1, supra) and since the offense was committed by appellant while armed (R.S. 2:176-5, now N.J.S. 2A:151-5, supra), an additional penalty of five years on each could have been imposed (State v. LaVera, 35 N.J. Super. 256 (App. Div. 1955), certiorari denied 350 U.S. 853, 76 S.Ct. 95, 100 L.Ed. 758; cf. State v. Cianci, 18 N.J. 191 (1955)). These sentences could have been consecutive in nature (State v. Mahaney, 73 N.J.L. 53 (Sup. Ct. 1905); In re De Luccia, 10 N.J. Super. 374 (Cty. Ct. 1950)), encompassing a total of 60 years, less the good behavior and work time credits provided by statute (R.S. 30:4-140) and this without any enhancement of punishment as an habitual criminal. Moreover, release on parole, on sentences of this type, would also (but not exclusively, in view of the power in the nature of parole, i.e., limited pardon, exercised by the former Court of Pardons; In re New Jersey Court of Pardons, supra) have come within the jurisdiction of the board of managers of the State Prison, *408 under the system of parole then existing, and additional complications due to the habitual criminality of appellant, administratively determinable (White v. Parole Board, 17 N.J. Super. 580 (App. Div. 1952)) would be encountered, for such would have important bearing upon his eligibility for parole consideration (R.S. 30:4-106.2, repealed L. 1948, c. 84, § 38, p. 492). Parole provisions are fairly well known, particularly in circles which have had direct contact with them, and we are convinced that the appellant deliberately considered the alternatives before him, at least in gross aspect. Indeed, this is indicated in the testimony of Chief County Detective Navatto at the habeas corpus hearing:
"Q. What did he ask you? What did he tell you? A. Well, we talked in general about the whole proceedings, and he was more concerned with the penalty involved in each one of the offenses. In fact, I think he totaled maximum sentences that would run from 52 to 57 years as maximum.
Q. You mean if he was sentenced separately? A. If he was sentenced separately, yes. And he was placing that against the penalty of a habitual criminal, which would be life, and decided that he better plead as a habitual criminal * * *."
It has been our purpose in this broad review of all of appellant's claims (although partially unnecessary in view of prior litigation, State v. Fontano, supra) to accord him full protection of the constitutional rights which he asserts were infringed, but also, and not less importantly, to approach a finality of disposition. As stated by Judge Hand in United States ex rel. McCann v. Thompson, supra [144 F.2d 606]:
"Even this great writ can be abused, and when the question has once been decided upon full consideration, there must be an end, else the court becomes the puppet of any pertinacious convict."
That review, as well, has convinced us that appellant not only was not constitutionally aggrieved in the basic proceedings, but richly deserved the sentences imposed under legislation by which the modern state has attempted to rid itself of the scourge of habitual criminality, within constitutional *409 boundaries, as a matter of necessary public policy. Graham v. State of West Virginia, supra; In re Huyler, 133 N.J.L. 171 (Sup. Ct. 1945); In re Zee, supra.
The judgment of the Somerset County Court is affirmed.