52 N.J. Super. 1 (1958)
144 A.2d 561
LAWRENCE JANIEC, PLAINTIFF-APPELLANT,
v.
LLOYD E. McCORKLE, PRINCIPAL KEEPER OF THE NEW JERSEY STATE PRISON, DEFENDANT-RESPONDENT.
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LAWRENCE JANIEC, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 12, 1958.
Decided August 28, 1958.
*5 Before Judges STANTON, HALL and GAULKIN.
Mr. Samuel Carotenuto argued the cause for appellant (Mr. Alfred J. Skaf, attorney).
Mr. Solomon Lautman, First Assistant Prosecutor of Monmouth County, argued the cause for defendant-respondent (Mr. Vincent P. Keuper, Monmouth County Prosecutor, attorney; Mr. Lautman of counsel and on the brief).
Mr. Archibald Kreiger, Deputy Attorney General, argued the cause for plaintiff-respondent (Mr. Charles S. Joelson, Deputy Attorney General, Acting Passaic County Prosecutor, attorney; Mr. Kreiger of counsel).
The opinion of the court was delivered by HALL, J.A.D.
This consolidated appeal is from a judgment entered in the Monmouth County Court denying *6 without hearing an application for a writ of habeas corpus and a final order in the Passaic County Court denying a subsequent motion for a "writ of error coram nobis * * * and for such other and further relief as may be just and proper." Appellant is confined in the State Prison under a life sentence as an habitual criminal imposed in Monmouth County on October 11, 1951. R.S. 2:103-10, as amended, L. 1940, c. 219 (now N.J.S. 2A:85-12 and 13, as amended, L. 1953, c. 166). The object of both proceedings, prosecuted by assigned counsel, was the same, viz., to vacate for alleged constitutional reasons, the first conviction (in which the sentence had been fully served) of the four, in order of time, for high misdemeanors on which the habitual criminal charge and life sentence were grounded, seeking thereby to void that sentence ultimately. It should be kept in mind that the Multiple Offender Law cited does not create a new or separate offense; the theory of the statute is that proof of the former convictions simply authorizes the court to impose the greater punishment for the substantive crime (the fourth high misdemeanor) then being dealt with. Worbetz v. Goodman, 47 N.J. Super. 391, 405 (App. Div. 1957).
The conviction in question was had on a charge of breaking and entering with intent to steal, in the Passaic County Court of Special Sessions, on a trial without a jury held January 17, 1930, at which appellant defended himself, following his written waiver of indictment and trial by jury executed January 13, 1930 and plea of not guilty entered to an allegation in three alternative counts on January 16, 1930. He was sentenced on the 17th to an indeterminate term in the Rahway Reformatory, and institutional records disclose to us that the sentence was served and he was paroled on December 27, 1930. The three subsequent convictions for high misdemeanors involved in the life sentence occurred in 1933 in Bergen County, in 1938 in Mercer County and in 1951 in Monmouth County.
Events leading up to the present proceedings actually began in Monmouth County in 1946. From that time to *7 1953 Janiec engaged in continuous litigation reaching our appellate courts concerning such occurrences and related to the instant matters. A brief resume thereof assists in putting this appeal in its proper light. In the fall of 1946 several indictments were returned against him in that county, including one charging him as an habitual criminal based on the three prior high misdemeanor convictions in Passaic (the one concerned in the present litigation), Bergen and Mercer Counties and on two other such crimes (breaking and entering and larceny) in Monmouth alleged in the indictment for the first time, i.e., on which there had been no conviction at the time the indictment was returned. On December 2 and 3 he was convicted on two robbery indictments tried together and on a third indictment for escape. The grand jury immediately on December 3 returned another indictment charging him again as an habitual criminal based on the same three prior out-of-county convictions and one of the robbery convictions just had. Janiec pleaded not guilty to it, but it was never moved for trial, nor was the earlier habitual criminal indictment at that time. He was shortly thereafter sentenced to terms of imprisonment on the escape conviction and one of the robbery convictions and to life imprisonment on the other robbery conviction, even though the latter indictment had not alleged the prior convictions or charged him as a multiple offender and no hearing had been had or proof on the same presented.
He first sought to review the life sentence by application for habeas corpus to the Mercer County Court of Common Pleas. The writ was denied and the denial upheld by the Supreme Court, the opinion being reported In re Janiec, 137 N.J.L. 94 (1948), in which the court said his remedy was by appeal. He appeared pro se in this proceeding. The United States Supreme Court denied certiorari. Janiec v. State of New Jersey, 336 U.S. 939, 69 S.Ct. 742, 93 L.Ed. 1098 (1949). Then he sought to appeal the imposition of the life sentence as well as the robbery and escape convictions. Counsel was assigned. The Appellate Division refused to review the convictions because the appeal *8 therefrom was not timely taken, but set aside the life sentence because of failure to charge and prove adequately, with all safeguards of due process to the defendant, the elements of the status of habitual criminality. The matter was remanded for appropriate sentence on the robbery indictment as to which the life sentence had been found wrongly imposed. State v. Janiec, 9 N.J. Super. 29 (App. Div. 1950). On defendant's appeal the Supreme Court affirmed the refusal to review the convictions. 6 N.J. 608 (1951). Certiorari was denied. 341 U.S. 955, 71 S.Ct. 1007, 95 L.Ed. 1376 (1951). Thereafter, in June 1951 a sentence of a term of years was substituted for the life sentence on this robbery indictment. At the same time he was convicted for contempt in facie curiae and sentenced to a term of one year therefor.
The next proceeding was an application for a writ of habeas corpus to review his convictions on the escape charge and the robbery charge which had not involved the life sentence. He also sought to appeal thereby from the other robbery conviction in which he had just been resentenced. The writ was denied and the denial affirmed on appeal. State v. Janiec, 15 N.J. Super. 445 (App. Div. 1951), certiorari denied 342 U.S. 894, 72 S.Ct. 203, 96 L.Ed. 670 (1951). Janiec acted as his own counsel in these proceedings. The principal basis asserted for the relief were numerous alleged violations of constitutional rights by law enforcement officers prior to trial. This court commented in its opinion:
"Although Janiec has litigated his convictions through several courts, this action, for the first time, raises questions of violations of constitutional rights and procedural errors. We are of the opinion that in view of the defendant's failure to raise these issues previously in the protracted litigation of his convictions, his rather belated assertions of violations of constitutional rights may be justifiably dismissed as spurious." (15 N.J. Super. at page 449).
Prior to this decision of the Appellate Division, he was tried in 1951 on the original indictment charging him with *9 breaking, entering and larceny and as an habitual criminal (not the second such indictment returned December 3, 1946) and found guilty by the jury of larceny and the multiple offender charge, the latter based on the larceny conviction simultaneously returned and the three prior ones in Passaic, Bergen and Mercer counties. A life sentence was imposed  the sentence here involved. Janiec appealed pro se. This court affirmed the larceny conviction, but reversed that as an habitual offender for error in the court's charge, remanding the case for redetermination of sentence. State v. Janiec, 20 N.J. Super. 471 (App. Div. 1952). The state appealed and the Supreme Court reversed, reinstating the verdict, sentence and judgment in the County Court. 11 N.J. 397 (1953).
It is significant that Janiec did not challenge at the trial or on the appeals any of these three prior convictions in any way or on any ground. He was represented by competent court-appointed counsel and had every opportunity to do so. The Supreme Court found that there was ample proof of them at the trial and that they were not denied by defendant. On the stand he said: "I remember being convicted but I can't give you the dates."
The final reported appellate chapter until the present was an appeal to this court from the contempt conviction, in which Janiec also acted as his own counsel. State v. Janiec, 25 N.J. Super. 197 (App. Div. 1953). The flat one-year sentence was held erroneous on the basis that a minimum and maximum term was required and the matter remanded for appropriate re-sentence. It does not appear whether such took place.
Appellant's challenge to the 1930 conviction in the instant proceedings is based on a claim of violation of constitutional rights in failure to have counsel to defend him or to be advised of his right to the same. The allegations in support of the claim are thus set forth in his affidavit annexed to his notice of motion for coram nobis (his habeas corpus application is not contained in the appendix submitted but we understand it was substantially identical):
*10 "2. I make this affidavit in support of an application to set aside the prior judgment of conviction entered in this Court on the 17th day of January, 1930, upon the ground that at the time of my arraignment and trial as well as during all subsequent proceedings, I was not represented by counsel and was not advised that I was entitled to such representation or that if I was without funds and desired counsel the Court would assign counsel to me.
3. I was arrested on January 7, 1930, charged with the crime of breaking and entering with intent to steal in the City of Passaic at which time I was of the age of seventeen years. I was arraigned on said charge on January 16, 1930 and pleaded not guilty thereto. I waived indictment by the Grand Jury and trial by jury and was tried for said offense on the next day, to wit, January 17, 1930. I was not represented by counsel at the arraignment, trial or at any stage of the proceedings nor was I advised that I was entitled to such representation or that if I was without funds that the Court would assign counsel to me. I understand  and I refer to the affidavit of my attorney submitted herewith  that the records of the above proceedings show no representation by counsel on my behalf. I believe they also fail to mention the name of an attorney who might have represented me.
4. I distinctly recall defending myself in this proceeding and being of tender years. I did not fully understand the import of my waivers of indictment or trial by jury. I had been in difficulty before but never in a position like the above mentioned where I had to stand trial alone. My prior contacts with the law were, I believe, juvenile matters and in 1930, I had had very little schooling  having left school at an earlier age. I know that if I realized the seriousness of the charge and of its results, I would not have waived any of my rights nor proceeded to trial without an attorney to represent me. There is no doubt that I was totally ignorant of my rights at that time.
5. I also recall being very frightened at the time of this affair and if I had been advised of my right to counsel, and that the Court would have assigned counsel to me, I would have gladly accepted the assistance of any counsel. If I had been so represented, I might have comprehended the nature of the charges better and a proper defense might have been interposed instead of the defense of a boy of my age actually made."
It will be noted that there is no contention that Janiec requested counsel, or that he was not guilty or had any defense to the charges, that his trial was so conducted as to be lacking in fundamental fairness, or that the failure to have counsel resulted in his conviction or prejudiced him to any sufficient extent. Nor does he say that he was ignorant of the charges against him or of the import of his waivers *11 of indictment and trial by jury. The most he really says is that if he had been aware of his right to counsel, he would have accepted such assistance, might then have comprehended the nature and seriousness of the charges better, might not have waived indictment and trial by jury and might have interposed a better defense. It is conceded that there has been no attack on the conviction in any fashion until the present. Nowhere in his papers does he state any reason for his failure to seek relief earlier or offer any explanation of the delay.
We were advised at the oral argument by counsel for the State that investigation disclosed that the only documents or entries that could be found on file or of record on the matter in Passaic County are the waiver, order for trial based thereon, and the allegation, on the back of which is noted the plea, verdict and sentence with the dates. There is no stenographic record or reporter's notes of the plea, trial or sentence in existence. The judge who took the plea, presided at the trial, rendered the verdict and imposed sentence is deceased, as is his reporter and secretary, and there is no one presently in the prosecutor's office, clerk's or any other office who had any acquaintance or has any recollection of it. After 28 years, it is said, and no doubt correctly, that there is nothing to establish one way or the other whether the appellant was advised of any right to counsel or requested or waived such, or to cast any light on his understanding of the charge and the possible consequences of the course he pursued or alternatives thereto, or on the nature of the trial and the defense interposed. The prosecutor tells us that he can now see no way to rebut by affirmative evidence any testimony the appellant might give in support of his present claims. This is not to be wondered at in view of the great lapse of time.
We are convinced that habeas corpus is not an available remedy in the instant situation and that the judgment of the Monmouth County Court denying the writ without hearing was correct. Appellant's attack in reality is not on *12 the judgment finding him to be an habitual offender, the trial leading up to the same or the sentence imposed thereunder, or even on the requisite fourth high misdemeanor conviction had at the same time, but rather is collateral against one of the basic elements necessary to establish that status, viz., one of the prior convictions in a completely different court on the ground that that court, by reason of claimed disregard of his constitutional rights, did not have jurisdiction to try and convict him. Under our statute the writ is not available to "any person committed or restrained of his liberty by virtue of a final judgment of a competent tribunal of civil or criminal jurisdiction or by virtue of any process issued pursuant thereto, * * *" N.J.S. 2A:67-14(b). There is no challenge to the jurisdiction of the Monmouth County Court and it is under that court's judgment that he is being detained. Equally fundamental is the principle that an applicant must be entitled to immediate release, if successful, for the writ to issue. In re Kershner, 9 N.J. 471 (1952), certiorari denied Kershner v. State of New Jersey, 344 U.S. 844, 73 S.Ct. 59, 97 L.Ed. 656 (1953); Kline v. State, 41 N.J. Super. 391 (App. Div. 1956); Rau v. McCorkle, 47 N.J. Super. 36 (App. Div. 1957). Here even if appellant were successful in voiding the Passaic County conviction, he would not be entitled to immediate release (quite apart from the matter of any time that might remain to be served on the other Monmouth County sentences or as a result of violations of parole from earlier sentences elsewhere). The most that could happen would be that while the life sentence would thereafter fall as illegal, there would be an appropriate resentence on the larceny conviction which represented the fourth high misdemeanor, as occurred when his first life sentence was set aside. 9 N.J. Super. at pages 29, 36, supra. R.R. 3:7-15(a). We conclude that habeas corpus is not an appropriate or available remedy in this State where a person confined as an habitual criminal seeks to attack an underlying conviction on the ground that the court in which such conviction took place had no jurisdiction to try or convict *13 him. Cf. State v. Culver, 30 N.J. Super. 561, 562 (App. Div. 1954), affirmed 16 N.J. 483 (1954).
Turning to the other proceeding, the Passaic County Court treated the application strictly as one for a "writ of error coram nobis to vacate the judgment of conviction" in 1930, denying it on the basis recited in its order that "the remedy sought by the defendant has been superceded under the Rules governing the Courts of New Jersey and that no authority exists for the grant of such motion." The conclusion was obviously based on the fifth sentence of R.R. 4:62-2 governing civil practice, which expressly supersedes this and other specified procedures and declares that the procedure for "any relief from a judgment or order shall be by motion as prescribed in these rules * * *" The denial was therefore on a narrow procedural basis and no consideration appears to have been given to the additional prayer of the notice of motion "for such other and further relief as may be just and proper." The prosecutor advised us that the judge did not call upon him at the motion hearing for any answer or argument either in fact or law and did not consider the merits of the application.
We must therefore first consider whether the writ of coram nobis exists in New Jersey today, and if not, whether some other form of remedy is or must be held available to provide a remedy in a situation where the sentence on the conviction sought to be vacated on constitutional grounds has been fully served.
The ancient writ of coram nobis was a 16th Century invention of the common law. We need not elaborate greatly on its incidents, requirements, development, and modern usage, which may be found discussed, among other places, in Frank, Coram Nobis, chapters 1, 2 and 3 (1953), 30A Am. Jur., Judgments, § 734-749, and United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). A brief sketch derived from these sources will serve our purpose. The writ, coram nobis or coram vobis depending on the court in which relief was sought, was originally devised in England as a means of rectifying the unjust *14 situation arising from the fact that any allowable method of appeal at common law was limited only to review for errors of law and there was no redress for an error of fact not apparent on the record and unknown to the court at the time of trial, which would have brought about a different result. Like all writs in those days, it issued out of Chancery and was addressed to the court in which the judgment had been entered, imploring that tribunal to recognize the error and correct the judgment. Later it was obtained by motion to the trial court itself. It was not a writ of right, but discretionary, in the legal sense. If issued it resulted in a hearing for the presentation of proofs on the existence and sufficiency of the error claimed, and, if such was established, in a vacation of the judgment and a new trial. Its use, even in ancient days, was never extensive and it fell into disuse even in England with the development of other effective procedures. Probably its most frequent utilization was in civil cases to invalidate a judgment where a party was an infant or insane at the time of trial, which was not known or apparent to the trial court and prejudice resulted.
The procedure very probably can be said to have come to this country as part of the common law, but, as such, appears to have been in use continuously down through the years in only a few of our jurisdictions, principally Illinois, Indiana, Wisconsin, New York and the federal courts, and then only in certain situations. It did, however, come to be adopted and utilized in these and some other states in criminal cases where no other remedy was available to right a fundamental wrong. Other more modern and simpler devices of equal effect took its place in states where the writ was never or seldom used.
In recent years it has had a very considerable resurgence in the jurisdictions mentioned and others as a procedural mechanism in criminal cases to raise and determine, in the trial court after conviction and sentence, alleged violations of constitutional rights of defendants and disregard of the elements of fundamental fairness in criminal trials which could not be raised by appeal, habeas corpus or other means. *15 In some states it would appear now to be so used in situations where habeas corpus is available in New Jersey. In the leading case of United States v. Morgan, supra, a 5-4 decision, the United States Supreme Court held it remained as a remedy in the federal judicial system to try out a claim of a defendant, in state custody as a result of a conviction and sentence there as a second offender, based on a prior conviction in the federal court in which the sentence had been fully served, that he was denied his constitutional rights under the Sixth Amendment in the federal trial. It was spoken of as an "extraordinary remedy" allowable "only under circumstances compelling such action to achieve justice. * * * Otherwise a wrong may stand uncorrected which the available remedy would right." (346 U.S. at pages 511, 512, 74 S.Ct. at page 252, 98 L.Ed. at pages 256, 257).
It is not clear whether coram nobis ever existed, except theoretically, or was actually used in New Jersey. We can find no reference to it in any of our statutory revisions or compilations going back to the later years of the 18th Century, and it appears to have been mentioned in only two reported cases and then only in the course of historical discussion relating to modern civil procedural problems. La Bell v. Quasdorf, 116 N.J.L. 368, 371, 372 (Sup. Ct. 1936); Hager v. Weber, 7 N.J. 201, 206 (1951). In the former, Justice Heher commented that at common law "all courts of record possessed an inherent power to vacate their judgments," and after making mention of this "ancient writ" went on to say: "The modern method of attack is by summary motion to vacate the judgment; and it is well-settled that such a motion is addressed to the sound discretion of the court, in the exercise of which considerations of justice and equity govern." (116 N.J.L. at pages 371, 372). In the comment on Rule 3:60-2 (now R.R. 4:62-2) which expressly abolishes the writ, found in the Supreme Court's Tentative Draft, Rules Governing All of the Courts of New Jersey (1948), at p. 225, it is stated:
"Writs of coram nobis and coram vobis are obsolete in New Jersey, but being expressly abolished by Federal Civil Rule 60(b) *16 [which our rule substantially copied], they have been abolished by Rule 3:60-2."
Despite the federal rule, the Supreme Court in the Morgan case, supra, held the writ preserved in the federal system in criminal cases by reason of the statutory provision that all federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions agreeable to the usages and principles of law." 28 U.S.C. § 1651 (a). There is no counterpart thereto in New Jersey. Article XI, Section 1, paragraph 4 of the Constitution of 1947 found in the schedule thereto and providing that "* * * all writs, actions, judgments, decrees, causes of action * * * claims and rights of individuals * * * shall continue unaffected notwithstanding the taking effect of any Article of this Constitution," does not have reference to former procedural mechanisms, as far as the problem before us is concerned.
We are satisfied that if coram nobis ever existed in this State, it was abolished by former Rule 3:60-2, effective September 15, 1948, both as to civil and criminal matters, since the writ was originally and generally considered to be civil in nature even though utilized in criminal causes. The current comparable remedy as to civil actions is found in R.R. 4:62-2 specifying the bases and procedure by motion for relief from a final judgment, order or proceeding. There is no exact counterpart in our criminal practice rules (cf. R.R. 3:7-11, 12, 13 and 14), but if the constitutions, state and federal, or basic justice require it for the protection of fundamental rights, the absence of a precise rule or of express provision for a remedy will not prevent relief. Cf. State v. Oats, 32 N.J. Super. 435 (App. Div. 1954). Our rules are not a straitjacket (cf. R.R. 1:27A); courts still have inherent powers in such situations (cf. Turco Products v. Hydrocarbon Chemicals, 18 N.J. 130, 136 (1955)). In fact, our criminal rules contain such a saving clause:
"If no procedure is specifically prescribed the courts exercising criminal jurisdiction may proceed in any lawful manner not inconsistent *17 with the Constitution, these rules or with any applicable statute." R.R. 3:11-9.
The next question is whether New Jersey is required to afford a remedy for the purpose of vacating a conviction in case of a violation of constitutional rights where the sentence thereunder has been fully served, but where that conviction has a direct effect on the applicant's present incarceration as a multiple offender. We confine our discussion to that precise situation; what we have to say is not intended to have any necessary implication in any other circumstances. Although some jurisdictions have held that a writ of coram nobis could not issue after the expiration of the court term in which the judgment was rendered or after the time for appeal had expired (30A Am. Jur., Judgments, § 745), we think that considerations of fundamental justice and due process and the Fourteenth Amendment require that a remedy be afforded by New Jersey in the situation under discussion even after the sentence has been served. Such is the purport of Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), and Carter v. People of State of Illinois, 329 U.S. 173, 67 S.Ct. 216, 91 L.Ed. 172 (1946). Although United States v. Morgan, supra, involved a remedy under the federal judicial system and was essentially procedural in its holding, we conceive that the same requisite is implied there as well. As Mr. Justice Frankfurter said in Carter:
"A State must give one whom it deprives of his freedom the opportunity to open an inquiry into the intrinsic fairness of a criminal process even though it appears proper on the surface. * * * The Constitution commands the States to assure fair judgment. Procedural details for securing fairness it leaves to the States. * * * Wide discretion must be left to the States for the manner of adjudicating a claim that a conviction is unconstitutional. States are free to devise their own systems of review in criminal cases. A State may decide whether to have direct appeals in such cases, and if so under what circumstances * * * In respecting the duty laid upon them by Mooney v. Holohan, States have a wide choice of remedies. A State may provide that the protection of rights granted by the Federal Constitution be sought through the writ of habeas corpus or coram nobis. It may use *18 each of these ancient writs in its common law scope, or it may put them to new uses; or, it may afford remedy by a simple motion brought either in the court of original conviction or at the place of detention. * * * So long as the rights under the United States Constitution may be pursued, it is for a State and not for this Court to define the mode by which they may be vindicated." (392 U.S. at pages 175, 176, 67 S.Ct. at page 218, 91 L.Ed. at pages 174, 175.)
We therefore hold that persons in New Jersey in the situation of appellant do have a remedy to test their claims. The nature of that remedy lies with the court under our system and R.R. 3:11-9. We feel that it should be by motion to vacate the prior conviction and sentence, made to the court in which that conviction took place on fully verified papers and on notice to the county prosecutor. We are further of the opinion that it should have the attributes and incidents of the writ of coram nobis. The verified motion papers must adequately disclose on their face a sufficient basis, factually and legally, for the relief sought. The relief is discretionary, in the legal sense, and the judge must be satisfied in the first instance on the face of the papers that the applicant has made out a sufficient case to entitle him to a hearing to present his oral proofs. In the event they do not, the motion should be denied without further proceedings. If the papers make an adequate showing, a hearing with all the safeguards of due process, for the taking of oral proofs of both sides on the questions presented should be ordered, the matter to be determined thereon by the judge alone. If the conviction is set aside, the relief granted shall be a new trial on the original charge.
We further are convinced that an element which may properly be considered in this particular type of matter (although we have not considered or relied on it here), in assessing at the outset whether a case has been made out by the applicant's papers, is the length of time that has elapsed since the conviction sought to be vacated, even though such is no longer a justifiable basis of denial in a habeas corpus case in this State. We conceive a distinction between the two remedies. Broadly speaking, the policy of the law is *19 to limit very sharply the time for review or the setting aside of criminal judgments except on a claim of newly discovered evidence or denial of due process. State v. Oats, supra. Likewise a motion to vacate a civil judgment which is absolutely void must be made within a reasonable time, all in line with the salutary "policy of terminating litigation within a reasonable time, which is essential to the proper administration of justice." Garza v. Paone, 44 N.J. Super. 553, 557 (App. Div. 1957). Under coram nobis procedure, involving, of course, claims of denial of due process, it has been held on the one hand that delay of a long period of time in seeking relief constitutes laches and is a bar (United States v. Moore, 166 F.2d 102 (7 Cir. 1948), certiorari denied 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772 (1948)), and on the other that the writ knows no statute of limitations. (United States v. Morgan, 222 F.2d 673 (2 Cir. 1955); Haywood v. United States, 127 F. Supp. 485 (D.C.S.D.N.Y. 1954). See 30A Am. Jur., Judgments, § 745. We think the matter may and should be considered in New Jersey, as a question of first impression here, in the light of the language of the United States Supreme Court in United States v. Morgan, supra:
"Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice * * * Where it cannot be deduced from the record whether counsel was properly waived, we think, no other remedy being then available and sound reasons existing for failure to seek appropriate earlier relief, this motion in the nature of the extraordinary writ of coram nobis must be heard by the federal trial court." (346 U.S. at pages 511, 512, 74 S.Ct. at page 252, 98 L.Ed. at pages 256, 257) (Emphasis ours.)
We do not suggest that there is any precise period of limitations, but rather that the consideration of the matter should depend on the facts of each individual case. Where the elapsed period is so long as to make the delay unreasonable on its face in the light of all the circumstances, we believe it behooves the applicant in his papers to assert sound reasons for it, and if he fails to do so, it appears to *20 us that a court would be justified in denying relief in the initial stage on the face of the papers without depriving the applicant of due process of law. Even if a full hearing were ordered, the matter of delay is always one to be considered as a relevant factor in evaluating the credibility of an interested petitioner's testimony where the charges made must find support from such testimony. State v. Cynkowski, 10 N.J. 571, 577 (1952).
While New Jersey has been most zealous, especially in recent years "in the procedural protection of legal and constitutional rights, particularly those involving human freedom," even to the extent of considering "successive and repetitious applications" for habeas corpus amounting to abuse of the writ and imposition on the courts (Worbetz v. Goodman, supra, 47 N.J. Super. at pages 395, 397), it must not be lost sight of that society also has a real interest at stake in protecting itself against "the scourge of habitual criminality, within constitutional boundaries, as a matter of necessary public policy." (Worbetz v. Goodman, supra, 47 N.J. Super. at page 408). This interest will be seriously jeopardized if multiple offenders can, without any restraint or limitation, prosecute proceedings to set aside underlying convictions after years and years and when all effective means of meeting any story the applicant may see fit to tell have disappeared with the passage of time. As we have intimated, it might well be said that there is a distinction justifying a difference in the evaluation of claimed violations of constitutional rights and delay in asserting the same on an application for a writ of habeas corpus as compared with a motion to vacate a prior conviction in which the sentence has been served. In the former case, the claim is that the prisoner should not be in confinement at all; in the latter, the person is properly detained and the essential question is whether he should be tried over again for the earlier offense and how long he should ultimately be imprisoned. We repeat that the vacation of such a conviction is an extraordinary remedy to be effectuated only under compelling circumstances to accomplish justice. There *21 are not present the same deep and fundamental background and elemental characteristics as those which make habeas corpus the "Great Writ."
We proceed to consider whether appellant's motion papers to the Passaic County Court make a sufficient showing to require a hearing and the taking of proofs under the principles we have laid down. (This view of the case was adequately argued by counsel). Appeals are taken from judgments or orders and not from reasons assigned therefor. If the result below was right, there must be an affirmance even though an incorrect reason was given for the denial of the motion. Ballurio v. Castellini, 29 N.J. Super. 383, 387 (App. Div. 1954); R. Krevolin & Co., Inc., v. Brown, 20 N.J. Super. 85, 92 (App. Div. 1952).
As has been stated, appellant's claim of violation of constitutional rights said to void the conviction is based on the alleged failure to assign counsel to defend him or to advise him of his right to counsel. Since the event took place prior to 1948, the question is governed by our law in effect at the time of the conviction as well, of course, as by the effect of the Fourteenth Amendment. The basic principles are succinctly stated in the leading case of State v. Cynkowski, supra. Although the attack in that instance was by writ of habeas corpus on the validity of a conviction under which the defendant was then confined following a plea of non vult, the rules there summarized are no less pertinent to our situation. We quote from the opinion of Justice Jacobs:
"The defendant urges that the acceptance of his pleas of non vult without prior assignment of counsel deprived him of his constitutional rights under the Fourteenth Amendment. The Supreme Court has held that a State conviction in a non-capital case is not invalidated under the Fourteenth Amendment by a showing, without more, that it was entered pursuant to a plea of guilty made without counsel or affirmative advice of the right thereto. Bute v. People of State of Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986 (1948); Foster v. People of State of Illinois, 332 U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955 (1947). And our state decisions, in effect at the time of the defendant's convictions, imposed no requirement that the defendant be affirmatively advised of his right *22 to counsel. See State v. Murphy, 87 N.J.L. 515 (E. & A. 1915); State v. Raney, 63 N.J.L. 363, 365 (Sup. Ct. 1899). Our new practice rules adopted in 1948 do embody an express provision requiring the court to advise a defendant, who appears in court without counsel, of his right to counsel, and to assign counsel to represent him at the trial unless he elects to proceed without counsel or is able to obtain counsel. Rule 2:12-1. This provision could have no retroactive effect (cf. Norris v. United States, 190 F.2d 186, 188 (5 Cir. 1951)), and has no pertinency to the convictions in the instant matter, entered in 1940. See State v. Gladstone, 17 N.J. Super. 467, 472 (App. Div. 1952). We find nothing in the defendant's showing which establishes that the acceptance of his pleas of non vult was so unfair or unjust as to render the resulting convictions void." (10 N.J. at page 579.) (Emphasis ours.)
The view of the United States Supreme Court there set forth remains the law in that tribunal today. See the latest decision on the subject, Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167, 171 (1957).
Conversely, again by analogy to cases involving habeas corpus, if appraisal of the totality of facts in a given case leads to a conclusion that there has been a denial of fundamental fairness, shocking to the universal sense of justice, a case for relief has been made out. The "without more" has been supplied. State v. Ballard, 15 N.J. Super. 417 (App. Div. 1951), affirmed 9 N.J. 402 (1952); State v. Lenkowski, 24 N.J. Super. 444 (App. Div. 1953). Cf. Worbetz v. Goodman, supra.
The question always will be, as it is in a habeas corpus case, in which class or on which side of the line the particular case falls. The applicant must show initially on the face of his papers, to a prima facie degree, facts and circumstances giving rise to the conclusion that he is entitled to relief. The papers must be considered at this stage on the assumption that all factual allegations are true and the movant shall have the benefit of all reasonable inferences to be drawn therefrom in the same manner and to the same extent that the sufficiency of any other pleading is tested. State v. Lenkowski, supra. If they do not meet that test, the court may, as in habeas corpus cases, deny the motion without the necessity of a hearing for receipt of oral proofs. *23 State v. Cynkowski, supra; State v. Worbetz, 17 N.J. 569 (1955) certiorari denied 349 U.S. 941, 75 S.Ct. 787, 99 L.Ed. 1268 (1955); In re Cardinale, 36 N.J. Super. 137 (App. Div. 1955); State v. Raicich, 30 N.J. Super. 316 (App. Div. 1954) (holding that a denial without hearing is proper when the averments of the application are shown to be untrue by the official files and records).
We have earlier quoted the precise claims of appellant as set forth in his motion papers and have stated our views of the purport of them. The papers were prepared by competent counsel who shows by his own affidavit annexed thereto that a conscientious investigation was made. We can presume that all factual bases of claim that could in any way be justified or supported were stated. Assuming the truth of the statements and all reasonable inferences to be drawn therefrom and appraising "the totality of the facts" (without regard to the delay in seeking relief), we conclude that there is no sufficient showing of a denial of fundamental fairness, shocking to the universal sense of justice, so as to place the case in that class permitting or requiring relief. In our view the averments go no further, in legal effect, than the absence of counsel and of affirmative advice of the right thereto "without more." Treating the motion as an application for relief of the nature previously outlined, it was properly denied without a hearing for the taking of proofs.
Were we to consider the delay in seeking relief here, our affirmance of the Passaic County order could be placed as well on this equally strong ground. We have indicated the prejudice to the State's defense of the application which unquestionably exists because of the great lapse of time. Quite apart from the mere passage of 26 years of inaction (the proceedings on appeal were had in 1956), which is so long as to seem unreasonable on the face, appellant must obviously have been fully acquainted for a considerable period with the constitutional rights of a criminal defendant. He has been very regularly in court on criminal charges since 1930 and incarcerated a large part of that time in institutions where such matters are well known and apparently *24 quite thoroughly discussed, especially since 1948. The several appeals and other proceedings he has prosecuted as his own attorney evidence his possession of considerable learning along this line. He brought a habeas corpus proceeding as long ago as 1948 and sought to void other convictions on constitutional grounds in 1951. In that same year at his trial resulting in the present life sentence, and on the subsequent appeals relating thereto, no challenge was made, attempted or suggested as to the validity of this 1930 conviction or the two others in Bergen and Mercer Counties, which were then the subject of proof before the court and jury to form the basis for the finding of habitual criminality under the statute. Nor does there appear to have been any objection raised when the first life sentence was imposed in 1946, which also involved this 1930 conviction. There is no sound reason stated, or even inferable, in the papers why appropriate relief was not earlier sought. We strongly doubt if any excuse exists or could be shown for the inordinate delay, especially in view of the several obvious opportunities which were presented.
The judgment of the Monmouth County Court and the order of the Passaic County Court are affirmed.